Shirley LEWIS, Plaintiff
Below, Appellant,

v.

Milton H. WARD, Allen Born, Gerald J.
Malys, Rockwell A. Schnabel, Vernon
F. Taylor, Jr., Russell L. Wood, Cy-
prus Amax Minerals Company and
Amax Gold, Inc., Defendants Below,
Appellees.

No. 567,2003.

Supreme Court of Delaware.

Submitted: April 27, 2004.
Decided: June 16, 2004.

Joseph A. Rosenthal, Rosenthal, Monhait, Gross & Goddess, Wilmington, DE and Irving Bizar (argued) and A. Arnold Gershon, P.C., Ballon, Stoll, Bader & Nadler, P.C., New York City, for appellant, Shirley Lewis.

Kenneth J. Nachbar, William M. Lafferty (argued) and Susan D. Wood, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for appellees, Vernon F. Taylor, Jr. and Russell L. Wood.

David C. McBride, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, for appellees, Milton H. Ward, Allen Born and Gerald L. Malys.

Thomas P. Preston,Blank Rome, L.L.P., Wilmington, DE, for appellee, Amax Gold, Inc.

Joel Friedlander and Karen L. Pascale, Bouchard, Margules & Friedlander, Wilmington, DE, for appellees, Cyprus Amax Minerals Company.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice:

Shirley Lewis, the plaintiff-appellant, is a former shareholder of Amax Gold, Inc. ("Amax Gold"). The plaintiff brought this derivative action nearly seven years ago, challenging the fairness of a transaction between Amax Gold and its then majority stockholder, Cyprus Amax Minerals Company ("Cyprus"). While the litigation was pending in the Court of Chancery, Amax Gold merged with and into a subsidiary of Kinross Gold Corporation ("Kinross"), an Ontario corporation with no prior relationship to Amax Gold.

As a result of the reverse triangular merger between Amax Gold and Kinross, Amax Gold became a wholly-owned subsidiary of Kinross. The plaintiff's shares in Amax Gold were converted into the right to receive shares of Kinross. Consequently, after the merger, the plaintiff was no longer a stockholder of Amax Gold, but rather a stockholder of Kinross.

## Procedural Background

Following the merger, the defendants moved to dismiss the complaint on the ground that the plaintiff's derivative standing to pursue claims on Amax Gold's behalf was eliminated because she no longer held any shares in Amax Gold. After full briefing, the Court of Chancery granted the defendants' motions to dismiss and held that, pursuant to the general rule of *Lewis v. Anderson*,[1] the effect of the Amax Gold–Kinross merger was to deprive the plaintiff of standing to maintain her derivative action on behalf of Amax Gold. However, the Court of Chancery also granted the plaintiff leave to amend her complaint to allege facts that would bring her claims within the so-called "fraud exception" to the general rule of *Lewis v. Anderson*.

The plaintiff filed an amended complaint. Once again, each of the defendants filed a motion to dismiss. The Court of Chancery dismissed the plaintiff's amended complaint with prejudice, holding that she had not alleged sufficient facts to satisfy the fraud exception to the *Lewis* general rule and, therefore, no longer had standing to pursue her derivative claims.

## Issues on Appeal

The plaintiff has raised two issues on appeal. First, she argues that this Court should reconsider and overrule[2] *Lewis v. Anderson,* so that stock-for-stock mergers between unaffiliated corporations will not preclude continuing stockholders of the parent corporation from pursuing derivative litigation on behalf of a subsidiary corporation. Second, she submits that, under the general pleading standards that are applicable to Rule 12(b)(6) motions, her amended complaint adequately alleges that

the merger between Kinross and Amax Gold was fraudulently structured to deprive her of standing to prosecute this derivative action.

We have concluded that both of the plaintiff's arguments are without merit. Therefore, the judgment of the Court of Chancery must be affirmed.

## Original Complaint

The plaintiff, as a stockholder of Amax Gold, filed the original complaint in this action on October 8, 1996, "derivatively in the right of and for the benefit of the Company." The original complaint alleged that in 1995 and 1996, Amax Gold experienced unanticipated cost overruns in connection with a gold development venture known as the Fort Knox Project. At that time, Amax Gold was engaged in the exploration for, and mining of, gold and other precious metals. The original complaint further alleged that the cost overruns in the Fort Knox Project required additional financing. The crux of the plaintiff's derivative claim in the original complaint was that Amax Gold obtained such financing from its then majority stockholder, Cyprus, on terms that were not entirely fair to Amax Gold.

## Subsequent Merger

On February 9, 1998, Amax Gold announced that it intended to merge with Kinross, an unaffiliated third-party, in an arms'-length merger. On June 1, 1998, Amax Gold merged with and into Kinross Merger Corp. ("Merger Corp."), a wholly owned subsidiary of Kinross (the "Kinross Merger"). Prior to the merger, Kinross was traded on the New York and Toronto

---

1. *Lewis v. Anderson,* 477 A.2d 1040 (Del. 1984).

2. Prior precedents can only be overruled when this Court is sitting *en Banc.* Supr. Ct.

R. 4. The plaintiff did not file a motion for *en Banc* consideration. The panel did not order *en Banc* consideration *sua sponte* because of our unanimous view that *Lewis v. Anderson* should not be overruled.

stock exchanges and had assets of $461 million and annual revenues of $183 million. Kinross and Merger Corp. were both unrelated to Amax Gold prior to and at the time of the merger. After the Kinross Merger, in September 1998, Amax Gold changed its name to Kinam Gold, Inc.[3]

Pursuant to the Kinross Merger, shares of Amax Gold, including the shares owned by the plaintiff, were converted into the right to receive shares of Kinross. As a result of the Kinross Merger, Amax Gold is a wholly owned subsidiary of Kinross. Although the plaintiff no longer owns any shares of Amax Gold, she presumably still owns shares of Amax Gold's parent company, Kinross.

### Original Complaint Dismissed

In February 1999, all of the defendants moved to dismiss the original complaint on the grounds that the plaintiff was no longer a stockholder of Amax Gold and, therefore, lacked standing to assert derivative claims on its behalf. The Court of Chancery granted the defendants' motion to dismiss based on this Court's holding in *Lewis v. Anderson.* The effect of a merger, such as the one that took place in this case, is normally to deprive a shareholder of the merged corporation of standing to maintain a derivative action.[4] That general rule is, however, subject to two limited exceptions:

(1) Where the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action; and

(2) Where the merger is in reality a reorganization which does not affect plaintiff's ownership of the business enterprise.[5]

The plaintiff argued that her original complaint set forth facts that brought this case within the first of two exceptions articulated in *Lewis v. Anderson.* The Court of Chancery disagreed that the original complaint set forth facts that, if true, alleged the merger was "being perpetrated merely to deprive the plaintiff of derivative standing."[6] Because the plaintiff's brief suggested that she might be able to plead such a claim, however, the Court of Chancery granted the plaintiff leave to file an amended complaint.

### Amended Complaint

On October 13, 2000, the plaintiff filed an amended complaint. The most relevant substantive changes in the amended complaint were the addition of new paragraphs 26–31:

26. On or about February 9, 1998, a merger was announced between the Company [Amax Gold] and Kinross. The form of the merger contemplated that the Company would become a subsidiary of Kinross, and the common stockholders of the Company would receive shares of Kinross stock in exchange for their shares of Company stock.

27. The merger proxy statement, at p. 26, describes the discussions as leading potentially to a merger of equals. At p. 33, the merger proxy statement discloses that Kinross's contribution to

---

**3.** Nevertheless, all references in this opinion shall be to Amax Gold, rather than Kinam Gold, Inc.

**4.** *See Lewis v. Anderson,* 477 A.2d 1040, 1049–50 (Del.1984). *See also Lewis v. Ward,* 2003 WL 22461894 (Del.Ch. Oct. 29, 2003).

**5.** *Kramer v. Western Pac. Indus., Inc.,* 546 A.2d 348, 354 (Del.1988); *Lewis v. Anderson,* 477 A.2d at 1046 n. 10; *In re First Interstate,* 729 A.2d 851, 867 (Del.Ch.1998); *Ash v. McCall,* 2000 WL 1370341, at *12 (Del.Ch. Sept. 15, 2000).

**6.** *Lewis v. Anderson,* 477 A.2d at 1046 n. 10.

the combined entity ranged from 31.0% to 57.7% on the equity value measures. However, Kinross stockholders would own approximately 50% of the combined entity on an equity value basis.

28. At p. 28, it discloses that Kinross's total present value contribution would equal 45.5%. At p. 41, it discloses that the Company's contribution to the combined company ranged from 17% to 72% on equity measures and 57% to 134% on Enterprise measures. Under another analysis the Company's contribution was 45% to 53% to equity and 73% to 78% to Enterprise Value. The Company's stockholders would own approximately 50% of the equity and 67% of the Enterprise Value of the combined company.

29. The merger became effective on June 1, 1998.

30. The merger of the Company and Kinross was specifically structured and perpetrated in the form described in paragraph 26 merely to deprive the plaintiff and other common stockholders of standing to prosecute this action.

31. Moreover, there is no principled economic or equitable argument that plaintiff should lose standing here as a result of the merger between the Company and Kinross. Such loss of standing is inconsistent with basic economic principles as well as fundamental principles of equity and fairness.

The amended complaint also alleged the same substantive derivative claims that had been pled in the original complaint regarding the Fort Knox Project and the allegedly unfair financing.

The amended complaint alleges that demand on Amax Gold's Board of Directors under Chancery Court Rule 23.1 is futile because four of the seven members of that Board were officers and/or directors of Amax Gold's former majority stockholder, Cyprus, and were not disinterested. The plaintiff does not purport to bring this claim as a stockholder of Kinross in the form of a double derivative action. Accordingly, the amended complaint does not set forth any allegations regarding any demand having been made on the Kinross Board to pursue the claims or any allegations regarding demand futility as to the Kinross Board.

### Amended Complaint Dismissed

After the amended complaint was filed, all of the defendants again filed motions to dismiss. The Court of Chancery framed the question before it as "whether the plaintiff has pled facts invoking the fraud exception to the [*Lewis v. Anderson*] general rule that the loss of stockholder status in a merger divests a derivative plaintiff of standing?" After reviewing the allegations in the amended complaint regarding the Kinross Merger, the Court of Chancery concluded that, to survive a motion to dismiss, the plaintiff was required to plead "particularized facts invoking the fraud exception to *Lewis v. Anderson* in order to avoid dismissal," and that plaintiff failed to meet that burden. Alternatively, the Court of Chancery concluded that, even if the less stringent pleading standard in Court of Chancery Rule 12 was applicable to the plaintiff's claim of fraud, the plaintiff's amended complaint still failed to meet that standard because "[n]othing in the plaintiff's complaint reasonably supports the inference that Amax Gold structured the merger with Kinross the way it did solely to deprive the plaintiff of standing or that it was Amax Gold that sought this structure."

### Derivative Standing Requires Share Ownership

Under Delaware law, it is well established that a merger which eliminates a derivative plaintiff's ownership of shares of the corporation for whose benefit she has

sued terminates her standing to pursue those derivative claims.[7] In this appeal, the plaintiff asks this Court to reconsider and to overrule its now seminal holding in *Lewis v. Anderson*.[8] The plaintiff contends that, under general principles of equity and fairness, she has "equitable standing" to proceed with her derivative claims despite the fact that she no longer owns any shares of Amax Gold, the corporation on whose behalf she purports to sue.

In *Lewis v. Anderson*, this Court determined that Court of Chancery Rule 23.1, Del.Code Ann. tit. 8, § 259(a), and Del.Code Ann. tit. 8, § 327 "have been nearly universally construed" to require that, in the context of a corporate merger, "a derivative shareholder must not only be a stockholder at the time of the alleged wrong and at the time of commencement of suit but that he must also maintain shareholder status throughout the litigation."[9] The purpose of this rule is: "to eliminate abuses associated with a derivative suit"[10] and to ensure that "upon the merger the derivative rights pass to the surviving corporation which then has the sole right or standing to prosecute the action."[11] As the Court of Chancery explained in *Schreiber*:

> [A] merger which eliminates a complaining stockholder's ownership of stock in a corporation also ordinarily eliminates his status to bring or maintain a derivative suit on behalf of the corporation, whether the merger takes place before or after the suit is brought, on the theory that upon the merger the derivative rights pass to the surviving corporation which then has the sole right or standing to prosecute the action.[12]

When a merger eliminates a plaintiff's shareholder status in a company, it also eliminates her standing to pursue derivative claims on behalf of that company. Those derivative claims pass by operation of law to the surviving corporation, which then has the sole right and standing to prosecute the action. This Court and the Court of Chancery have consistently applied these well-established precepts of Delaware corporate law.

### *Lewis and Its Progeny*

In *Lewis v. Anderson*,[13] the plaintiff filed a derivative action on behalf of Conoco, Inc. ("Old Conoco") against various Old Conoco directors and officers alleging that the corporation had entered into improper employment agreements with nine of its officers in response to a third-party tender offer for the corporation. Following execution of these "golden parachutes," a bidding contest ensued for Old Conoco.[14] Du Pont acquired a majority interest in Old Conoco through a successful tender offer.

---

7. See *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del.1984); *Kramer v. Western Pac. Indus.*, 546 A.2d 348, 354 (Del.1988); *Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1244–45 (Del. 1999); *In re First Interstate Bancorp Consol. S'holder Litig.*, 729 A.2d 851, 868 (Del.Ch. 1998), aff'd sub nom. *Bradley v. First Interstate Bancorp.*, 748 A.2d 913 (Del.2000); *Ash v. McCall*, 2000 WL 1370341, at *13 (Del.Ch. Sept. 15, 2000).

8. *Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984).

9. *Id.* at 1046 (citing *Heit v. Tenneco, Inc.*, 319 F.Supp. 884 (D.Del.1970); *Schreiber v. Carney*, 447 A.2d 17 (Del.Ch.1982); *Harff v. Kerkorian*, 324 A.2d 215 (Del.Ch.1974); *Braasch v. Goldschmidt*, 199 A.2d 760 (Del.Ch.1964)).

10. *Lewis v. Anderson*, 477 A.2d at 1046 (citing *Harff v. Kerkorian*, 324 A.2d at 218).

11. *Schreiber v. Carney*, 447 A.2d at 21.

12. *Id.* (citations omitted).

13. *Lewis v. Anderson*, 477 A.2d 1040, 1042 (Del.1984).

14. *Id.*

The Old Conoco was merged into a Du Pont subsidiary. The surviving corporation was renamed New Conoco.[15]

In the back-end merger, the shareholders of Old Conoco received shares of Du Pont stock in exchange for their Old Conoco shares.[16] Thus, the plaintiff in *Lewis v. Anderson* became a Du Pont stockholder and Du Pont became the sole stockholder of New Conoco.[17] The defendants in *Lewis v. Anderson* then moved to dismiss the derivative complaint on the grounds that the plaintiff no longer had standing as an Old Conoco shareholder to pursue his derivative claims.[18] The Court of Chancery held that, by reason of the merger, the plaintiff had lost derivative standing to pursue the action.[19]

On appeal, in *Lewis v. Anderson*, this Court reconciled Delaware's extant common law jurisprudence and the applicable provisions of the Delaware General Corporation Law statute regarding derivative standing following a corporate merger:

> The holdings of *Braasch*, *Heit*, and *Schreiber* that a corporate merger destroys derivative standing of former shareholders of the merged corporation from instituting or pursuing derivative claims confirm [section] 327's requirement of continued as well as original standing....
>
> We conclude that 8 *Del. C.* [sections] 259, 261 and 327, read individually and collectively, permit one result which is not only consistent but sound: A plaintiff who ceases to be a shareholder, whether by reason of a merger or for

any other reason, loses standing to continue a derivative suit.[20]

This Court concluded that the plaintiff's derivative claim was an asset of Old Conoco that had "clearly passed by virtue of the merger under § 259 to New Conoco." Accordingly, in *Lewis v. Anderson*, we held that the decision whether to proceed against Old Conoco's former management was New Conoco's to make.[21]

Four years later, in *Kramer v. Western Pac. Indus., Inc.*,[22] this Court was again called upon to address the implications of a merger on a stockholder-plaintiff's standing to maintain a derivative suit post-merger, albeit this time in the context of a cash-out merger. Applying the general rule of *Lewis v. Anderson*, this Court affirmed the dismissal of the derivative suit and held that, "[t]o maintain a shareholder derivative suit, a plaintiff must be a shareholder at the time of the filing of the suit and must remain a shareholder throughout the litigation." [23] In *Kramer*, we also reaffirmed and restated the two exceptions to the general rule of *Lewis v. Anderson* as follows:

> This Court, in *Lewis*, set forth two exceptions in the merger context to its holding that only a current shareholder has standing to maintain an action that is derivative in nature: (i) if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action; or (ii) if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise.[24]

---

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.* at 1043.

19. *Id.*

20. *Lewis v. Anderson*, 477 A.2d at 1047–49.

21. *Id.* at 1050–51.

22. *Kramer v. Western Pac. Indus., Inc.*, 546 A.2d 348 (Del.1988).

23. *Id.* at 354 (*citing Lewis v. Anderson*, 477 A.2d 1040 (Del.1984)).

24. *Id.* (citations omitted).

In *Kramer,* we concluded that neither exception applied and held that the merger caused the plaintiff to lose standing to pursue the derivative claims.[25] Accordingly, in *Kramer,* we also held that "[t]itle to such claims has passed by operation of law to [the acquirer], and [the acquirer] alone has the right to determine whether to pursue such claims against the defendants."[26] Subsequent cases have applied the general rule of *Lewis v. Anderson* and held that a stockholder-plaintiff may not continue to pursue derivative claims following a merger that eliminates the plaintiff's shareholder status, unless facts are alleged that fall within one of the two exceptions.[27]

In support of her argument in favor of overruling *Lewis v. Anderson,* the plaintiff submits that this Court's holding in *Lewis v. Anderson* is "at odds with" the decision of the United States Court of Appeals for the Third Circuit in *Blasband v. Rales.*[28] Although this Court had the opportunity to comment on the Third Circuit's reasoning in *Blasband,* when the District of Delaware certified a question of law regarding the excusal of demand under Delaware law to the Court, we declined to do so because of the procedural posture of the case.[29] This Court stated, however, that "[o]ur

recognition of the limited scope of the present proceeding should not be interpreted as either an acceptance or a rejection of the Third Circuit's conclusions on matters of the substantive Delaware corporation law relating to the standing issue decided in *Blasband I.*"[30] In a subsequent decision that was affirmed by this Court, the Court of Chancery correctly held:

> The Third Circuit's decision in *Blasband* is both inconsistent with the clear holding of *Lewis v. Anderson* and immaterial to the decision in this case as, at most, it would recognize [the plaintiff's] ability to proceed double derivatively in the name of [the acquiring company], something which [the plaintiff] does not purport to do.[31]

The general rule of *Lewis v. Anderson* and its progeny is a logical corollary to the established principle of Delaware corporate law recognizing the separate corporate existence and identity of corporate entities, as well as the statutory mandate that the management of every corporation is vested in its board of directors, not in its stockholders.[32] When a merger eliminates a plaintiff's shareholder status in a corporation, it also generally eliminates her standing to pursue derivative claims on

---

25. *Id.* at 354–55.

26. *Id.* at 355.

27. *See, e.g., Parnes v. Bally Entm't Corp.,* 722 A.2d 1243, 1245 (Del.1999) ("Since a stockholder suing derivatively is bringing a corporate claim not a personal one, the stockholder must maintain his or her status as a stockholder in order to continue the litigation."); *In re First Interstate Bancorp Consol. S'holder Litig.,* 729 A.2d 851, 867 (Del.Ch.1998), *aff'd sub nom. Bradley v. First Interstate Bancorp.,* 748 A.2d 913 (Del.2000) ("The Delaware Supreme Court has held that once a plaintiff ceases to be a shareholder, whether by reason of a merger or for any other reason, [he] loses standing to continue a derivative suit.") (internal citations omitted).

28. *Blasband v. Rales,* 971 F.2d 1034 (3d Cir. 1992).

29. *See Rales v. Blasband,* 634 A.2d 927, 931 (Del.1993) (noting that the Third Circuit's decision allowing Blasband standing to pursue the derivative claims was the law of the case).

30. *Id.* n. 5.

31. *In re First Interstate Bancorp Consol. S'holder Litig.,* 729 A.2d at 868 n. 18 (citations omitted), *aff'd sub nom. Bradley v. First Interstate Bancorp.,* 748 A.2d 913 (Del.2000).

32. *See* Del.Code Ann. tit. 8, § 141(a) (2001); *Aronson v. Lewis,* 473 A.2d 805, 811 (Del. 1984).

behalf of that corporation. Those derivative claims pass by operation of law to the surviving corporation, whose board of directors then has the sole right and standing to prosecute the action. Accordingly, in this case, we ratify and reaffirm the general rule and two exceptions of *Lewis v. Anderson.*

### Mere Reorganization Inapplicable

■ The second recognized exception to the general rule of *Lewis v. Anderson* provides that derivative standing will not be eliminated where "the merger is in reality a reorganization which does not affect plaintiff's ownership of the business enterprise." [33] The primary precedents relied upon by the plaintiff in this appeal to overrule *Lewis v. Anderson* permitted derivative standing only because the facts of those cases fall into that second recognized exception. Both *Schreiber v. Carney* and *Helfand v. Gambee,* for example, involved applications of the *Lewis v. Anderson* "mere reorganization" exception.[34]

The present case involves the merger of two unrelated corporations. In *Bonime v. Biaggini,*[35] the Court of Chancery held that a merger of two independent corporations extinguishes a stockholder's standing to pursue derivative claims on behalf of the disappearing corporation.[36] In distinguishing the case from *Schreiber,* the Court of Chancery in *Bonime v. Biaggini* stated:

Here SPSF, as presently constituted, is the result of a merger of two distinct corporations each of which had separate boards, officers, assets and stockholders.... SPFS is distinctly different from either of its constituent corporations, Southern Pacific or Santa Fe.... In short, the entire corporate mix is distinctly different from that of Southern Pacific as its existed when plaintiffs' claim arose. As a consequence the shares held by plaintiffs represent property interests also distinctly different from that which they held as shareholders of Southern Pacific. They thereupon have lost standing to maintain this derivative litigation.[37]

The "mere organization exception" of *Lewis v. Anderson* has no applicability to this case. Amax Gold and Kinross were two distinct corporations, each with its own board of directors, officers, assets and stockholders. In this case, as in *Bonime v. Biaggini,* the Kinross Merger was far more than a corporate reshuffling. The equitable concerns that have caused Delaware courts to allow a plaintiff equitable standing following a mere corporate reorganization are not extant in the case *sub judice.*

### Fraud Exception Requires Particularization

■ In her original and amended derivative complaints, the plaintiff attempted to plead facts sufficient to bring her claims

---

**33.** *Lewis v. Anderson,* 477 A.2d 1040, 1046 n. 10 (Del.1984). *Accord Kramer v. Western Pac. Indus., Inc.,* 546 A.2d 348, 354 (Del.1988).

**34.** *See Schreiber v. Carney,* 447 A.2d 17, 22 (Del.Ch.1982) (allowing the plaintiff equitable standing because the merger of the corporation with a holding company was little more than a reorganization that had "no meaningful effect on the plaintiff's ownership of the business enterprise"); *Helfand v. Gambee,* 136 A.2d 558, 562 (Del.Ch.1957) (noting that

the plaintiff simply had "two pieces of paper rather than one" after the corporation split into two new corporations pursuant to an anti-trust consent decree).

**35.** *Bonime v. Biaggini,* 1984 WL 19830 (Del. Ch. Dec. 7, 1984), *aff'd,* 505 A.2d 451 (Del. 1985).

**36.** *Id.* at *2–3.

**37.** *Id.* at *3.

within the first exception to the general rule of *Lewis v. Anderson,* the so-called "fraud exception." In *Lewis v. Anderson,* this Court held that the fraud exception is applicable "where the merger itself is the subject of a claim of fraud." [38] The plaintiff argues that the Court of Chancery incorrectly applied the heightened pleading standards of Court of Chancery Rule 9(b) to her allegations that the Kinross Merger was fraudulent.

■ Although subsequent cases have paraphrased this Court's language in *Lewis v. Anderson,* the substance remains the same—a complaint seeking to invoke the fraud exception must demonstrate that the merger was fraudulent and done merely to eliminate derivative claims. [39] Therefore, the particularized pleading requirement of Rule 9(b) [40] must be satisfied by a derivative complaint that seeks to invoke the fraud exception in *Lewis v. Anderson.* Accordingly, the Court of Chancery correctly concluded that the plaintiff was required to plead "particularlized facts invoking the fraud exception to *Lewis v. Anderson* in order to avoid dismissal." [41]

### Fraud Allegations Inadequate

The plaintiff submits that "the amended complaint charges with particularized factual allegations that the purported merger of equals in reality was an acquisition of Kinross by Amax Gold" and, therefore, "that the merger was structured, with Kin-ross as parent and Amax Gold as subsidiary, to deny plaintiff standing to pursue this action." The Court of Chancery, however, was unable to discern any allegations in the plaintiff's amended complaint to suggest that the merger was the product of fraud. [42] The Court of Chancery's determination that the facts alleged were not sufficient to invoke the fraud exception to *Lewis v. Anderson* is supported by the record.

■ The Court of Chancery reasoned that for it to make economic sense for Cyprus—the then owner of over 58% of Amax Gold—to enter into the merger solely to eliminate the plaintiff's derivative claims, Cyprus' potential liability from the plaintiff's derivative action would have needed to be greater than the financial loss it would have experienced by accepting an inadequate price for its Amax Gold shares. According to the Court of Chancery, however, the plaintiff was "unable to identify with any precision the magnitude of [her] claims regarding the unfair financing that Cyprus Amax allegedly provided to Amax Gold" and, "[m]ost critically, nothing in the complaint supports a rational inference that Cyprus Amax would have entered into a merger divesting itself of 58% of Amax Gold solely to insulate itself and its affiliated directors from liability in this derivative action." The Court of Chancery concluded that "[g]iven the magnitude of the merger transaction, the in-

---

**38.** *Lewis v. Anderson,* 477 A.2d 1040, 1046 n. 10 (Del.1984).

**39.** *See, e.g., Kramer v. Western Pac. Indus.,* 546 A.2d 348, 354 (Del.1988) (holding that to invoke *Lewis'* fraud exception, a plaintiff must establish that the merger was the "subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action"); *Parnes v. Bally Entm't Corp.,* 1998 WL 51739, at *3 (Del.Ch. Feb.4, 1998), *rev'd on other grounds,* 722 A.2d 1243 (Del.1999) ("[P]laintiff may retain standing to pursue a derivative claim if the merger that

deprived her of her shares was effectuated fraudulently to deprive her of her claim.").

**40.** Court of Chancery Rule 9(b) states:

(b) *Fraud, mistake, condition of the mind.* In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

**41.** *Id.*

**42.** *Id.*

volvement of an Amax Gold special committee, and a third-party merger partner like Kinross, the absence of well-pled facts suggesting that the liability Cyprus Amax and its affiliated directors faced was so substantial as to have motivated them to cause Amax Gold to enter into a pretextual merger with another publicly traded company at a sub-optimal price is fatal." We agree.

The amended complaint makes no allegation that the Amax Gold Board of Directors dictated the structure of the Kinross Merger or that the Amax Gold Board even considered the plaintiff's derivative claims when it approved the Kinross Merger. In the absence of such allegations, the Court of Chancery properly determined that the mere fact that Amax Gold and Kinross chose to structure the merger as a reverse triangular merger "provides no rational basis to infer that the merger was a fraud designed merely to deprive stockholders of the corporation that has lost its status as a public company of derivative standing." In reaching that determination, the Court of Chancery properly recognized that no inference regarding Amax Gold's intent for entering into the merger can be drawn from the fact that Kinross was the surviving company after the merger, as opposed to Amax

Gold, because "triangular mergers are common and have a myriad of legitimate justifications."[43] In its analysis of the plaintiff's amended derivative complaint, the Court of Chancery properly construed our holding in *Lewis v. Anderson* as "focusing the 'fraud' inquiry on the board facing a derivative suit and whether that board caused the company [Amax Gold] to merge with another party simply to avoid defending the derivative suit rather than for other valid business reasons."

### Double Derivative Remedy

In this case, the plaintiff did not lack any remedy to pursue her derivative claims. Rather, as the Court of Chancery correctly recognized, the plaintiff might have been able to bring a post-merger double derivative suit but made no attempt to file such an action. In *Rales v. Blasband*, this Court set forth the procedures and standards for bringing a post-merger double derivative action.[44]

### Conclusion

The judgments of the Court of Chancery are affirmed.

**43.** *Lewis v. Ward*, 2003 WL 22461894, at *4 n. 18 & n. 19 (Del.Ch. Oct.29, 2003) (*citing* R. Balotti & J. Finkelstein, *The Delaware Law of Corporations & Business Organizations* §§ 9.7 & 9.8 (3d ed. Supp. 2003); J. Freund, *Anatomy of a Merger: Strategies and Techniques for Negotiating Corporate Acquisitions* 79, 105–07

(1975); and 1 L. Kling & E. Nugent, *Negotiated Acquisitions of Companies, Subsidiaries, and Divisions* § 1.02[11], at 1–19 (2001)).

**44.** *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).