# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAM MEHTA AND NEENA MEHTA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 6891-VCL |
| | ) | |
| SMURFIT-STONE CONTAINER | ) | |
| CORPORATION, AND ITS OFFICIALS, | ) | |
| ROCK-TENN COMPANY, AND ITS | ) | |
| OFFICIALS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 15, 2014
Date Decided: October 20, 2014

Ram Mehta and Neena Mehta, Buena Park, California; *Pro Se Plaintiffs*.

William M. Lafferty, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Attorneys for Defendants*.

**LASTER, Vice Chancellor.**

Plaintiffs Ram Mehta and Neena Mehta owned common stock of Smurfit-Stone Container Corporation (the "Company" or "Smurfit-Stone"). In this lawsuit, they challenge (i) decisions leading up to the Company's bankruptcy, along with steps taken in connection with its exit from bankruptcy, (ii) the Company's subsequent merger with and into Rock-Tenn CP, LLC ("Rock-Tenn Sub"), a wholly owned acquisition subsidiary of Rock-Tenn Company ("Rock-Tenn Parent"), and (iii) Rock-Tenn Sub's failure to provide them with the merger consideration after their demand for appraisal lapsed. The defendants have moved to dismiss the complaint for failure to state a claim on which relief can be granted. The challenges to the stock distribution and the merger are dismissed, but a claim against Rock-Tenn Sub for failing to provide the Mehtas with their share of the merger consideration survives.

## I. FACTUAL BACKGROUND

The facts are drawn from the verified amended complaint (the "Complaint") and the documents it incorporates by reference. Other facts are undisputed or subject to judicial notice. The plaintiffs, as non-movants, receive the benefit of all reasonable inferences.

### A. The Bankruptcy Proceeding

Smurfit-Stone is a Delaware corporation that manufactures paperboard and paper-based packaging. On January 26, 2009, Smurfit-Stone filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code. By order dated June 21, 2010, the bankruptcy court approved the Company's plan of reorganization. *In re Smurfit-Stone*

1

*Container Corp.*, Case No. 09-10235 (BLS) (Bankr. D. Del. Jun 21, 2010) (ORDER) [hereinafter "Confirmation Order"].

Under the plan of reorganization, and pursuant to the Confirmation Order, Smurfit-Stone's existing shares were cancelled and new shares of common stock were distributed to the Company's creditors and stockholders. Creditors received 95.5% of the new common stock. The common and preferred stockholders split the remainder. As part of the plan of reorganization, Smurfit-Stone's new board of directors approved employment agreements for management that contemplated the payment of bonuses if Smurfit-Stone engaged in a change-of-control transaction within a specified timeframe. *See In re Smurfit-Stone Container Corp. S'holders Litig.*, 2011 WL 2028076, at *2 (Del. Ch. May 24, 2011). Significantly, the Confirmation Order discharged and released all claims against Smurfit-Stone and its directors relating to the bankruptcy. *See* Confirmation Order ¶¶ 51–55.

The Mehtas owned Smurfit-Stone common stock before the bankruptcy proceeding. After the reorganization, the Mehtas held 1,486 shares of Smurfit-Stone common stock.

**B.     The Merger With Rock-Tenn**

On January 23, 2011, Smurfit-Stone and Rock-Tenn Parent announced their intention to merge. The merger agreement called for Smurfit-Stone to merge with and into Rock-Tenn Sub. Pursuant to the merger, each share of Smurfit-Stone common stock would be converted into the right to receive $17.50 in cash and .30605 shares of Rock-Tenn Parent common stock.

Over the next two months, stockholders pursued litigation in Delaware and Illinois challenging the adequacy of the merger consideration. After the Illinois cases were stayed in favor of the consolidated Delaware action, this court denied the stockholder plaintiffs' application for a preliminary injunction. *See Smurfit-Stone S'holders Litig.*, 2011 WL 2028076, at *1. The merger closed on May 27, 2011. The Delaware action was later settled, and this court approved the settlement by order dated February 2, 2012 (the "Settlement Order"). The Settlement Order certified the Delaware action as a class action, granted the defendants broad releases covering all possible claims arising out of or relating to the merger, and dismissed the Delaware litigation with prejudice.

## C. The Appraisal Demand

Through their broker, TD Ameritrade, the Mehtas made a timely demand for appraisal. Because they demanded appraisal, the Mehtas did not receive the merger consideration after the merger closed on May 27, 2011.

The Mehtas never filed a petition for appraisal. No other stockholder filed an appraisal petition either. The 120-day time period—during which at least one stockholder must file an appraisal petition for an appraisal proceeding to move forward—came and went on July 26, 2011.

The Mehtas withdrew their demand for appraisal in writing on March 16, 2012, long after the time for filing an appraisal petition had run. From that point on, the Mehtas communicated repeatedly with TD Ameritrade, the defendants, this court, and others about the withdrawal of their appraisal rights. They consistently represented that they no

longer wanted to pursue an appraisal proceeding and that they wanted to receive the merger consideration.

TD Ameritrade attempted unsuccessfully to obtain the merger consideration for the Mehtas. TD Ameritrade eventually told the Mehtas that they would have to deal directly with Rock-Tenn Parent and Rock-Tenn Sub to obtain the merger consideration.

Even though no stockholder had filed an appraisal petition, the Rock-Tenn entities took the positions that (i) the Mehtas only could receive the merger consideration if they withdrew their demand for appraisal, (ii) the Mehtas only could withdraw their demand for appraisal with Rock-Tenn Sub's consent, and (iii) to receive Rock-Tenn Sub's consent, the Mehtas had to agree to a broader settlement, the details of which are not relevant here. Because the Mehtas did not agree to any of the Rock-Tenn entities' settlement proposals, Rock-Tenn Sub never provided the Mehtas with the merger consideration.

## D.    This Litigation

The Mehtas filed this action on September 23, 2011. In substance, the Complaint alleged claims for breach of fiduciary duty against the past and present directors of Smurfit-Stone and the Rock-Tenn entities. The Complaint did not assert a claim for appraisal. The deadline for filing an appraisal petition had come and gone nearly two months earlier.

After the Complaint was filed, the action languished for nearly a year. By letter dated September 5, 2012, the court inquired as to whether the matter should be dismissed for lack of prosecution pursuant to Rule 41(e). After receiving correspondence from the

4

Mehtas, the court informed them that the Complaint would be dismissed for lack of prosecution if not served by October 31, 2012. The Mehtas filed an amended complaint and served it on the defendants.

On November 11, 2012, the defendants filed a two-page motion to dismiss pursuant to Rule 12(b)(6) and Rule 23.1. The motion to dismiss indicated that the substance of the defendants' arguments would be fleshed out in an opening brief to be filed later. The action again became inert.

By letter dated January 7, 2014, the court inquired as to whether the matter now should be dismissed for lack of prosecution pursuant to Rule 41(e). After receiving correspondence from the Mehtas, the court held a status conference on April 17 during which it directed the parties to brief the motion to dismiss. They did, and the court conducted a hearing on the motion on September 15.

## II. LEGAL ANALYSIS

The defendants seek to dismiss the Complaint for failing to state a claim on which relief can be granted. *See* Ch. Ct. R. 12(b)(6). In a Delaware state court, the pleading requirements for purposes of a Rule 12(b)(6) motion "are minimal." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).

> When considering a defendant's motion to dismiss, a trial court should accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as "well-pleaded" if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof.

5

*Id.* (footnote omitted). The operative test in a Delaware state court is one of "reasonable conceivability." *Id.* at 537 (footnote and internal quotation marks omitted). This standard asks whether there is a "possibility" of recovery. *Id.* at 537 n.13.

Because the plaintiffs have proceeded as *pro se* litigants, the allegations of the Complaint "may be held to a somewhat less stringent technical standard than formal pleadings drafted by lawyers." *Vick v. Haller*, 522 A.2d 865, 1987 WL 36716, at *1 (Del. Mar. 2, 1987) (ORDER). To ensure that a *pro se* plaintiff receives a full and fair hearing, a court has discretion to "look to the underlying substance" of a *pro se* pleading. *Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008) (Strine, V.C.); *see Jackson v. Unemployment Ins. Appeal Bd.*, 1986 WL 11546, at *2 (Del. Super. Sept. 24, 1986) (extrapolating claim of due process violation from complaint consisting of exhibits and two sentences of "argument"). The Complaint still must state a claim on which relief can be granted, but the court will not fault a *pro se* plaintiff for neglecting to use proper legal terms or for failing to frame allegations in customary fashion.

## A. Claims Relating To The Bankruptcy Proceeding

The Complaint alleges that Smurfit-Stone's directors and officers mismanaged the Company in breach of their fiduciary duties, leading to its bankruptcy. The Complaint then challenges the distribution of 95.5% of the common stock of the reorganized entity to its creditors, which the Complaint contends was unfair to pre-bankruptcy stockholders. The Complaint objects to the grants of stock options and restricted stock that were made to the reorganized entity's directors and officers, and the Complaint alleges that the reorganized entity's officers lined their own pockets by entering into employment

6

agreements that provided for change-of-control benefits, then seeking out a change-of-control transaction. The Confirmation Order released all of these claims, so they fail to state a claim on which relief can be granted.

The Confirmation Order provided that "all distributions and rights afforded under the Plan [of Reorganization]. . . shall be . . . in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and any other obligations, suits . . . or liabilities of any nature whatsoever . . . relating to any of the Debtors . . . ." Confirmation Order ¶ 51. The existence of a bankruptcy court confirmation order approving a plan of reorganization and releasing claims requires the dismissal of a later pleading that attempts to litigate those claims. *Agostino v. Hicks*, 845 A.2d 1110, 1117 (Del. Ch. 2004). To the extent the Complaint attacks events leading up to the bankruptcy, the substance of the bankruptcy proceeding, or the results of the plan of reorganization, the Complaint is dismissed.

## B. Claims Relating To The Merger

The Complaint next alleges that the directors and officers of Smurfit-Stone breached their fiduciary duties by agreeing to a merger with Rock-Tenn Parent and Rock-Tenn Sub, then causing Smurfit-Stone to merge with and into Rock-Tenn Sub. A combination of doctrines defeats the breach of fiduciary duty claims relating to the merger, which fail to state a claim on which relief can be granted.

7

As a preliminary matter, the breach of fiduciary duty theories advanced in the Complaint conceivably could be framed as either direct claims or derivative claims.[1] Assuming the breach of fiduciary duty claims are derivative, then the Mehtas cannot press them because they lost standing in the merger. *See Lewis v. Ward*, 852 A.2d 896, 901 (Del. 2004). The Complaint's generalized and conclusory assertions of fraud on the part of the directors are insufficient to bring the Complaint within any of the exceptions to the continuous ownership requirement. *See Arkansas Teacher*, 75 A.3d at 894–95 (describing the fraud exception to the standing rule); *Lewis*, 852 A.2d at 905. Assuming the breach of fiduciary duty claims are direct, then the Settlement Order released them. *Arkansas Teacher*, 75 A.3d at 897. To the extent the Complaint attacks events leading up to the merger or the substance of the merger, it is dismissed.

## C.    The Failure To Provide The Mehtas With The Merger Consideration

Finally, the Mehtas argue that the defendants conspired with TD Ameritrade to withhold the merger consideration from the Mehtas. TD Ameritrade is not a party to the case, so this decision does not address the allegations against that firm. Focusing on the defendants in this litigation, the Mehtas' real grievance is that even though they long ago

---

[1] *Compare Arkansas Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888, 896 (Del. 2013) ("[P]re-merger fraudulent conduct [that] makes a merger inevitable . . . gives rise to a direct claim that can survive the merger . . . ."), *and Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243, 1245 (Del. 1999) (holding that stockholders could assert direct claims challenging merger where CEO allegedly breached his duty of loyalty by requiring acquirer to give him side-payments as a condition of any deal) *with Kramer v. Western Pac. Indus.*, 546 A.2d 348, 352 (Del. 1988) (holding that breach of fiduciary duty claims challenging side-payments in the form of stock option grants and severance payments triggered by a merger were derivative, not direct).

withdrew their demand for appraisal, Rock-Tenn Sub (the surviving corporation in the merger) still has not provided them with the merger consideration. Although the Mehtas have not framed a theory using recognizable legal concepts, they have a claim against Rock-Tenn Sub for failure to provide them with the merger consideration.

The operative event giving rise to Rock-Tenn Sub's obligation to provide the Mehtas with the merger consideration was not their attempted withdrawal of their appraisal demand, but rather the failure of any stockholder to file a petition for appraisal within 120 days after the effective time of the merger. Once that deadline passed, the right to appraisal lapsed for all stockholders who had demanded appraisal, triggering an obligation on the part of the surviving corporation to pay them the merger consideration. Because Rock-Tenn Sub has never paid the Mehtas the merger consideration, they have a claim to recover it.

Section 262(d)(1) of the Delaware General Corporation Law provides that a stockholder who wishes to pursue appraisal must make a timely written demand therefor. 8 *Del. C.* § 262(d)(1). The demand is necessary to perfect a stockholder's right to appraisal, but it is not sufficient to prevent the right from lapsing. A stockholder's right to appraisal can lapse, even after the demand has been made, if the stockholder votes in favor of the merger giving rise to appraisal rights or accepts the merger consideration. *See* Jesse A. Finkelstein & John D. Hendershot, *Appraisal Rights in Mergers and Consolidations*, 38-5th C.P.S. §§ IV(H)(3), at A-26 n.145 (BNA) (collecting cases). Within the first 60 days after the effective time, a stockholder also can withdraw its demand for appraisal unilaterally, without the corporation's consent, causing the right to

appraisal to lapse. 8 *Del. C.* § 262(e). After the first 60 days, a stockholder only can withdraw an appraisal demand with consent of the corporation. *Id.* § 262(k); *see also Dofflemyer v. W.F. Hall Printing Co.*, 432 A.2d 1198, 1201 (Del. 1981).

Section 262(e) establishes a final requirement which, if not met, causes all stockholders who have demanded appraisal to lose their appraisal rights. Section 262(e) requires that an appraisal petition be filed within 120 days of the merger. 8 *Del. C.* § 262(e). If an appraisal petition is not filed on time, then all appraisal rights lapse. Finkelstein & Hendershot, *supra*, 38-5th C.P.S. § IV(H)(3), at A-27. The 120-day time period for the filing of an appraisal petition provides the surviving corporation with certainty regarding its exposure to an appraisal proceeding. If an appraisal petition is not timely filed, then the corporation can pay out the merger consideration to the putatively dissenting stockholders.

In this case, the merger closed on May 27, 2011. The 120-day mark came and went on July 26, 2011, without anyone filing an appraisal petition. At that point, the appraisal rights of all stockholders who demanded appraisal lapsed. The Mehtas and any other stockholders who demanded appraisal became entitled to the merger consideration from Rock-Tenn Sub, and Rock-Tenn Sub could pay out the merger consideration without fear that an appraisal petition might be filed later and somehow resurrect the appraisal claims. The Mehtas, however, were never provided with the merger consideration.

Understandably given their status as *pro se* litigants, the Mehtas have not framed a claim for the merger consideration in traditional legal terms, but it can be conceptualized

10

in at least two ways. One way to frame the legal theory would be as a breach of contract claim. The certificate of incorporation is a "contract between a Delaware corporation and its stockholders." *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 955 (Del. Ch. 2013) (citing *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010)). "It is elementary that [the Delaware General Corporation Law's] provisions are written into every corporate charter." *Federal United Corp. v. Havender*, 11 A.2d 331, 333 (Del. 1940). The corporate contract between the Mehtas and Smurfit-Stone included the provisions of Section 262, which call for stockholders who demanded appraisal to receive the merger consideration when no appraisal petition is timely filed. Rock-Tenn Sub breached the corporate contract by failing to pay the merger consideration when it came due.

As an alternative to a breach of contract framework, the claim can be conceived of as one for unjust enrichment. Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (internal quotation marks omitted). "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Rock-Tenn Sub's retention of the merger consideration meets each element. The failure to pay the merger consideration enriches Rock-Tenn Sub while impoverishing the Mehtas, with a direct relationship between the two. Once no one filed an appraisal

11

petition and any demands for appraisal lapsed, there was no justification for Rock-Tenn Sub's retention of the benefit. If the claim is not conceptualized as a contractual violation, then there is an absence of a remedy at law, creating a gap for the doctrine of unjust enrichment to fill.

It is not necessary at this point to determine authoritatively whether the claim is best treated as one for breach of contract, unjust enrichment, or some other legal theory. It is sufficient at this point that the Mehtas have a claim against Rock-Tenn Sub for retaining the merger consideration.

## D. The Scope Of The Remedy

In seeking damages, the Mehtas have not limited themselves to amounts tied to the merger consideration. They also seek consequential damages for harm they suffered because the defendants failed to pay them the merger consideration in time for the Mehtas to capitalize on the depressed real estate market that persisted in the aftermath of the Great Recession. They argue that because they did not receive the merger consideration promptly, they could not purchase the home they wanted in a desirable school district. They also argue that when their account was not credited with the merger consideration, they received a margin call from TD Ameritrade and had to sell other stocks at a disadvantageous time. The Mehtas cannot recover these categories of damages.

As discussed in the preceding section, the sole surviving claim can be regarded as a claim for breach of the Smurfit-Stone corporate charter. Under principles of contract law, the categories of damages that the Complaint identifies are consequential damages,

defined as damages that "do not flow directly or immediately" from the breach. *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, 2011 WL 549163, at *6 (Del. Ch. Feb. 16, 2011); 24 WILLISTON ON CONTRACTS § 64:12 (4th ed. 2012). A plaintiff only can recover consequential damages if they were foreseeable at the time of contracting. *Pharm. Prod.*, 2011 WL 549163, at *6; *see* RESTATEMENT (SECOND) OF CONTRACTS § 351(1) (1981) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee. . . ."). In this case, there is no reasonably conceivable basis on which Rock-Tenn Sub might have perceived that its failure to pay the merger consideration after the Mehtas' appraisal rights lapsed would result in damages based on the Mehtas' inability to buy their desired home or TD Ameritrade's imposition of a margin call. "The law does not . . . promote speculative damages at the [defendant's] expense." *Ryan v. Tad's Enterprises, Inc.*, 709 A.2d 682, 689 (Del. Ch. 1996) (internal quotation marks omitted).

If the remaining claim is considered as one for unjust enrichment, the Mehtas cannot recover these types of damages either. The most likely measure for damages under an unjust enrichment claim would be the amount by which Rock-Tenn Sub was unjustly enriched. *See Delaware Express Shuttle, Inc. v. Older,* 2002 WL 31458243, at *15 (Del. Ch. Oct. 23, 2002) ("The Defendants' profits . . . are the correct measure of their unjust enrichment and of Delaware Express' damages."); *see also Pike Creek Prof'l Ctr. v. E. Elec. & Heating, Inc.*, 540 A.2d 1088, 1988 WL 32028, at *2 (Del. Apr. 5, 1988) (ORDER) (affirming award of damages based on amount by which defendant was unjustly enriched). The defendants were not unjustly enriched by an amount that

13

incorporates amounts attributable to the TD Ameritrade margin call or the Mehtas' inability to buy their desired home.

The challenge of determining a more specific damages figure can be deferred until a later stage of the case, recognizing that the amount of damages that the Mehtas can recover is complicated by the fact that the merger consideration comprised a mixture of cash and stock. The remedy for Rock-Tenn Sub's failure to pay the cash portion is relatively straightforward: damages equal to the amount of the cash portion plus an award of pre-and post-judgment interest running from July 27, 2011, the day after the 120-day filing period ran, until the date of payment. *See Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011) ("[P]rejudgment interest in Delaware cases is awarded as a matter of right . . . .").

The remedy for Rock-Tenn Sub's failure to provide the stock portion is more difficult and will require input from the parties if this case reaches the remedial stage. One method would be to convert the stock component into a cash value based on the trading price of the shares on the date when payment was due and bring that amount forward with interest. Another method would be to award the value of the shares at the time of judgment, including intervening splits and dividends. Both of these approaches, however, select arbitrary points for valuing the shares. A third possibility would be to recognize that if the Mehtas had received the stock component when it was due, they would have had the ability to sell at a time of their own choosing during the period after July 27, 2011, until the date of judgment. In other situations where a party has a right to sell and the defendant has foreclosed the plaintiff from exercising that right, the law

14

awards the plaintiff the highest intermediate value of the shares. *See Duncan v. TheraTx*, 775 A.2d 1019, 1023 (Del. 2001); *Paradee v. Paradee*, 2010 WL 3959604, at *13 (Del. Ch. 2010); *Am. Gen. Corp. v. Continental Airlines Corp.*, 622 A.2d 1, 10 (Del. Ch. 1992).

These and other remedial issues can be confronted at a later time. This decision holds only that the Mehtas are not entitled to recover speculative, consequential damages based on their inability to buy a home in a more desirable neighborhood or due to TD Ameritrade's margin call.

## III. CONCLUSION

Except for the claim for non-payment of merger consideration, this action is dismissed. To the extent the Complaint seeks damages not resulting directly from the failure to pay the merger consideration, the Complaint is dismissed.