ARKANSAS TEACHER RETIREMENT
SYSTEM, Fire & Police Pension As-
sociation of Colorado, Louisiana Mu-
nicipal Police Employees' Retirement
System, Central Laborers Pension
Fund, and Public Employees' System
of Mississippi, Objectors Below, Ap-
pellants,

v.

Anthony CAIAFA and Ming Fang Li,
Plaintiffs Below, Appellees,

and

Countrywide Financial Corp., Bank
of America Corp., Defendants
Below Appellees.

No. 530,2009.

Supreme Court of Delaware.

Submitted: April 28, 2010.
Decided: May 21, 2010.

Stuart M. Grant, Jay W. Eisenhofer,
Michael J. Barry and Diane Zilka of Grant
& Eisenhofer P.A., Wilmington, DE. Of
Counsel: Blair A. Nicholas, Niki L. Men-

doza, David A. Thorpe and Jon F. Worm of Bernstein Litowitz Berger & Grossman LLP, San Diego, CA; Lester L. Levy Carl L. Stine and Robert Plosky, Wolf Popper LLP, New York City, for appellants.

Pamela S. Tikellis, Robert J. Kriner, Jr. and Scott M. Tucker of Chimicles & Tikellis LLP, Wilmington, DE. Of Counsel: Steven J. Toll and Julie Goldsmith Reiser of Cohen Milstein Sellers & Toll PLLC; Jeffrey W. Golan and William J. Ban of Barrack, Rodos & Bacine, Philadelphia, PA, for appellees Anthony Caiafa and Ming Fang Li.

Thomas A. Beck, Richard P. Rollo and Scott W. Perkins of Richards, Layton & Finger, P.A., Wilmington, DE. Of Counsel: Eric M. Roth, Stephen R. DiPrima, Martin J.E. Arms and Graham W. Meli of Wachtell, Lipton, Rosen & Katz, New York City, for appellees Countrywide.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, court en banc.

STEELE, Chief Justice:

Former Countrywide stockholder, Arkansas Teachers Retirement Systems, objected to the Vice Chancellor's approval of a settlement among a majority of Countrywide stockholders, Countrywide directors, and Bank of America, related to Countrywide's merger with BOA. TRS objected on the basis that the Vice Chancellor failed to value TRS's derivative claim pending in a companion Federal District Court action. The Vice Chancellor denied the objection and approved the settlement, allowing BOA to close its acquisition of Countrywide, thus extinguishing TRS's standing to pursue derivative claims. Because the Vice Chancellor did not abuse his discretion by holding that TRS's derivative suit claims for breach of asserted duties were worthless and, therefore, added no con-

ceivable value to the merger, we **AFFIRM** his judgment approving the settlement.

■ At the hearing on the objection to the settlement, TRS argued that the Vice Chancellor should place part of the merger consideration into a constructive trust in order to protect the value of its derivative claims. TRS alleged that it had sufficiently pleaded a derivative claim in Federal District Court, and that the Vice Chancellor erred by valuing that claim as worthless. The Vice Chancellor appropriately denied the objection, because Delaware corporate fiduciary law does not require directors to value or preserve piecemeal assets in a merger setting, and TRS failed to show a likelihood of prevailing on the merits of its claims. Therefore, we affirm the Vice Chancellor's decision on the basis of the reasons in his opinion.

\* \* \*

We note, however, that TRS has alleged facts that reflect conduct wholly inappropriate for Delaware corporate directors. Countrywide's board settled insider trading, improper stock repurchase, and predatory lending claims, while the company exposed itself to bad loans causing plummeting stock value that allegedly cost Countrywide $848 million to $25 billion. TRS does not, however, claim that the board fraudulently conducted or inadequately priced the merger transaction (nor on this record could they reasonably have done so). In isolation, this would preclude its claim for fraud, but the allegations underlying TRS' request for relief suggest a potential relationship between the directors' alleged premerger fraudulent conduct and the rapidly and severely depressed stock price on which the merger consideration was based.

■ Other than in instances of fraud or reorganization, a plaintiff loses standing to maintain a derivative suit where the corpo-

ration, in which the plaintiff holds stock, merges with another company.[1] A stockholder may maintain his post-merger suit "if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive stockholders of the standing to bring a derivative action."[2] *Anderson* generally applies where stockholder-plaintiffs allege that the board inadequately priced or improperly conducted a corporate merger, but its terms apply more broadly to fraud connected to the merger.

 The current record does not reflect that the directors prospectively sought and approved a merger, solely to deprive stockholders of standing to bring a derivative action. The extent of the Countrywide directors' allegedly fraudulent conduct and breach of fiduciary duties by failing loyally to oversee the company's practices in good faith would have necessitated (a) corporate rescue; and, (b) individual legal protection. A merger was one of few available alternatives that meet both of those objectives after the board's allegedly fraudulent schemes bankrupted a multibillion-dollar company. Delaware law recognizes a single, inseparable fraud when directors cover massive wrongdoing with an otherwise permissible merger.[3]

The Vice Chancellor noted that "avoiding derivative liability was neither the only nor the principal reason for supporting the transaction."[4] Although we agree that the Countrywide directors and stockholders ran from the *crest* of a ruinous wave of losses, we cannot ignore the close connection between that wave's crest and its underlying trough. No one disputes that Countrywide needed to sell itself, and at a price significantly below its recent share price. An otherwise pristine merger cannot absolve fiduciaries from accountability for fraudulent conduct that necessitated that merger.[5] TRS has pleaded facts supporting a colorable claim of fraud that, if proved, would have made the company's dissolution or auction a *fait accompli.*

As BOA amassed its Countrywide stockholdings, these directors might have seen BOA as a potential fiduciary White Knight. That is, after allegedly intentionally engaging in fraudulent conduct that caused the stock price to plummet near bankruptcy, Countrywide directors would understandably seek an acquirer to effect a merger that would extinguish potential derivative claims during such a period of upheaval that they would have few alternatives. Whether this plausible scenario reflects this board's single, cohesive plan or merely ties together, like patchwork, a snowballing pattern of fraudulent conduct and conscious neglect, the result is the same and would not fairly constitute a proper discharge of the fiduciary duties of directors of a Delaware corporation.

TRS did not present this claim to the Vice Chancellor, nor did it present us with the proper vehicle to consider whether TRS meets the fraud exception to maintain a post-merger claim. If the Vice Chancellor had found that TRS had successfully pleaded its fraud claim, then TRS—rather

---

1. *Lewis v. Anderson,* 477 A.2d 1040, 1049 (Del.1984); *Bokat v. Getty,* 262 A.2d 246, 249 (Del.1970); *Braasch v. Goldschmidt,* 199 A.2d 760, 767 (Del.Ch.1964) (addressing a § 253 merger, but *Anderson* stated that *"Braasch v. Goldschmidt,* is essentially a 259 case").

2. *Lewis v. Ward,* 852 A.2d 896, 902 (Del.2004) (quoting *Kramer v. Western Pac. Idus., Inc.,* 546 A.2d 348, 354 (Del.1988)).

3. *Braasch,* 199 A.2d at 764.

4. *In re Countrywide,* 2009 WL 2595739, at *17.

5. *Braasch,* 199 A.2d at 764.

than Countrywide—could recover from the former Countrywide directors. In that case, the injured parties would be the shareholders who would have post-merger standing to recover damages instead of the corporation. We, therefore, must hold that the Vice Chancellor did not abuse his discretion in approving the settlement, despite facts in the complaint suggesting that the Countrywide directors' premerger agreement fraud severely depressed the company's value at the time of BOA's acquisition, and arguably necessitated a fire sale merger.

For the foregoing reasons, we **AFFIRM** the Vice Chancellor's Order approving the settlement.