[No. B231432. Second Dist., Div. Three. Aug. 30, 2012.]

JOSEPH VILLARI, Plaintiff and Appellant, v.
ANGELO R. MOZILO et al., Defendants and Respondents.

NEW JERSEY CARPENTERS PENSION FUND, Plaintiff, v.
ANGELO R. MOZILO et al., Defendants.

TEAMSTERS LOCAL 456 ANNUITY FUND, Plaintiff, v.
ANGELO R. MOZILO et al., Defendants.

COUNSEL

Robbins Umeda, Brian J. Robbins, Kevin A. Seely and Arshan Amiri for Plaintiff and Appellant.

O'Melveny & Myers, Seth Aronson, Matthew W. Close, Bradley J. Butwin, Jonathan Rosenberg and William J. Sushon for Defendant and Respondent Bank of America Corporation.

No appearance for Defendants and Respondents Angelo R. Mozilo, David Sambol, Eric P. Sieracki, Henry G. Cisneros, Jeffrey M. Cunningham, Roberto J. Donato, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell and Harley W. Snyder.

OPINION

**CROSKEY, J.**—Delaware's continuous ownership rule requires a plaintiff in a shareholder derivative action to retain stock ownership for the duration of the litigation. A plaintiff who ceases to be a shareholder as a result of a merger, or for any other reason, loses standing to maintain a derivative action. The Delaware Supreme Court has stated in several opinions, however, that a former shareholder will retain standing to maintain a derivative action despite a merger if the sole purpose of the merger was to eliminate potential derivative claims. This is known as the fraud exception to the continuous ownership rule.

Joseph Villari (plaintiff) appeals a judgment dismissing his second amended complaint after the sustaining of a demurrer without leave to amend. The trial court concluded, pursuant to the continuous ownership rule, that plaintiff had no standing to maintain shareholder derivative claims on behalf of Countrywide Financial Corporation (Countrywide), a Delaware corporation, after its acquisition by Bank of America Corporation (Bank of America) and merger into another corporation. Plaintiff nonetheless contends that he has adequately alleged a factual basis for application of the fraud exception based on dicta contained in the recent opinion of the Delaware Supreme Court in *Arkansas Teacher Retirement System v. Caiafa* (Del. 2010) 996 A.2d 321 (*Arkansas Teacher*). We disagree and conclude that *Arkansas Teacher* cannot be read to support plaintiff's contention. The dismissal of plaintiff's second amended complaint by the trial court was correct. We will therefore affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### 1. *Original Complaints and Consolidation*

Robert L. Garber filed a shareholder derivative complaint in August 2007 on behalf of Countrywide against several of its officers and directors and against Countrywide as a nominal defendant. Garber alleged that the individual defendants had mismanaged the company's mortgage lending business, disseminated misinformation so as to disguise the company's perilous financial condition and engaged in insider selling based on nonpublic information. He alleged eight counts for various breaches of fiduciary duty, insider selling, waste of corporate assets, and unjust enrichment.

New Jersey Carpenters Pension Fund and Teamsters Local 456 Annuity Fund filed similar shareholder derivative complaints in October 2007 on behalf of Countrywide against several of its officers and directors and against Countrywide as a nominal defendant. The trial court consolidated the three actions in January 2008.[1]

### 2. *Acquisition, Merger and Consolidated Complaint*

On January 11, 2008, Countrywide announced its proposed acquisition by Bank of America.[2] Garber, Villari, New Jersey Carpenters Pension Fund and Teamsters Local 456 Annuity Fund filed a consolidated shareholder derivative and class action complaint in this action that same day. The plaintiffs challenged the proposed acquisition in their class action allegations. The trial court stayed the action in March 2008 because of a pending shareholder derivative action in federal court in California involving essentially the same claims (*In re Countrywide Financial Corp. Derivative Litigation* (C.D.Cal., No. CV-07-06923-MRP (MANx))) and a Delaware class action challenging the proposed acquisition and merger (*In re Countrywide Corp. Shareholders Litigation* (Del.Ch., No. 3464-VCN)).

Countrywide shareholders approved its acquisition by Bank of America on terms that provided for each Countrywide shareholder to receive shares of

---

[1] We judicially notice the consolidation orders filed on January 2 and 18, 2008. (Evid. Code, § 452, subd. (d).)

[2] Plaintiff alleges in his second amended complaint that, prior to this announcement, Countrywide had been under increasing credit pressure due to loan losses. It had publicly reported that "all three [credit] rating agencies have placed our ratings on some form of negative outlook." Plaintiff also alleges that "[t]he credit concerns came to a head on January 8, 2008, when the Company's stock price collapsed on widespread reports that it would soon have to file for bankruptcy protection. The New York Stock Exchange was forced to halt trading in the stock before the Company released a statement denying that it planned to file for bankruptcy. The price rebounded shortly before tumbling further. Countrywide's shares closed down 28.4% to $5.47."

stock in Bank of America in exchange for their Countrywide shares. The acquisition was completed in July 2008, and Countrywide was merged into Red Oak Merger Corporation, a subsidiary of Bank of America. Red Oak Merger Corporation later changed its name to Countrywide Financial Corporation (New Countrywide).

### 3. First Amended Consolidated Complaint, Demurrer and Other Events

New Jersey Carpenters Pension Fund and Teamsters Local 456 Annuity Fund voluntarily dismissed their claims in November 2008.[3] In December 2008, the federal court in California granted the individual defendants' motion for judgment on the pleadings against the derivative claims alleged in the federal action on the grounds that the merger had deprived the plaintiffs of standing to maintain a derivative action on behalf of Countrywide, pursuant to the continuous ownership rule.[4] An appeal from that order is currently pending in the Ninth Circuit Court of Appeals (Arkansas Teacher Retirement System v. Mozilo, No. 10-56340).

In August 2009, the Delaware trial court in the class action challenging the acquisition and merger approved a settlement and release of all claims relating to the acquisition and merger.[5] The trial court in the present action lifted the stay in November 2009.

Plaintiff filed a first amended complaint on February 19, 2010, on behalf of Bank of America against several former Countrywide directors and officers and against Bank of America and New Countrywide as nominal defendants. He alleged double derivative claims and omitted the prior class action allegations. Bank of America demurred to the complaint, and New Countrywide joined in the demurrer. On June 3, 2010, the trial court sustained the demurrer as to both defendants with leave to amend, concluding that Villari had failed to allege a proper basis to excuse him from the requirement of making a prior demand on the boards of directors of the two nominal defendants.

---

[3] We judicially notice the requests for dismissal filed on November 5, 2008. (Evid. Code, § 452, subd. (d).)

[4] A federal district court in Delaware similarly granted a motion to dismiss derivative claims on behalf of Countrywide in another action in October 2008, also pursuant to the continuous ownership rule. (In re Countrywide Financial Corp. Derivative Litigation (D.Del. 2008) 581 F.Supp.2d 650, 652–653.)

[5] As we discuss below, it was this trial court ruling that led to the Delaware Supreme Court's opinion in Arkansas Teacher, supra, 996 A.2d 321.

### 4. *Second Amended Consolidated Complaint and Demurrer*

Plaintiff filed his second amended complaint on August 3, 2010, on behalf of Countrywide against several of its former directors and officers and against Bank of America as a nominal defendant. He alleges that (1) the individual defendants mismanaged the company's mortgage lending business, disseminated misleading information concerning the company's financial condition and engaged in insider selling based on nonpublic information; (2) the individual defendants' fraudulent scheme resulted in Countrywide's severely impaired financial condition and severely depressed stock price, and necessitated both a corporate rescue and their individual legal protection from liability for their alleged fraud; and (3) the acquisition was an effort to accomplish both of these objectives and was part of a single, inseparable fraud.

Plaintiff alleges six shareholder derivative counts on behalf of Countrywide for various breaches of fiduciary duty, insider selling, waste of corporate assets and unjust enrichment. He also again alleges six additional double derivative counts "in the alternative" on behalf of Bank of America on the same grounds.[6]

Bank of America demurred to the complaint, arguing that Villari had failed to adequately allege the fraud exception to the continuous ownership rule. Bank of America also argued that plaintiff had again failed to allege a proper basis to excuse him from the prior demand requirement.

On November 10, 2010, the trial court sustained the demurrer to each count without leave to amend. The court concluded that (1) Delaware law applied, (2) the merger deprived plaintiff of standing to maintain a derivative action, and (3) plaintiff had failed to allege a proper basis for application of the fraud exception. In light of the court's prior order sustaining a demurrer to the double derivative claims on June 3, 2010, and the aforesaid stipulation of the parties (see fn. 6, *ante*), the court stated that it had no need to address those claims.

---

[6] As confirmed in a stipulation dated September 1, 2010, the second amended complaint included, as "alternative claims," the double derivative claims that were the subject of the trial court's order of June 3, 2010, sustaining Bank of America's demurrer (with leave to amend) to the first amended complaint. The stipulation provided that these claims would be included in the second amended complaint (as counts 7–12) but without the intent to have further trial court litigation with respect to their viability. This was done, according to the terms of the stipulation, "for the sole purpose of preserving plaintiff's rights on any appeal . . . . " In the stipulation, plaintiff expressly reserved the right to appeal the dismissal of his double derivative claims.

### 5. *Judgment and Appeal*

The trial court entered a judgment dismissing the complaint against all defendants on January 7, 2011.[7] Plaintiff filed a timely appeal.

### *CONTENTION*

Plaintiff contends he has adequately alleged a basis for the fraud exception to Delaware's continuous ownership rule as applied to his shareholder derivative claims. He makes no argument with respect to the double derivative claims.

### *DISCUSSION*

### 1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

### 2. *Shareholder Derivative Actions and Individual Actions*

A shareholder derivative action is an action in which a corporate shareholder acting on behalf of the corporation asserts a cause of action for harm done to the corporation, typically involving a breach of a fiduciary duty owed to the corporation by its officers or directors. (*Kramer v. Western Pacific Industries, Inc.* (Del. 1988) 546 A.2d 348, 351 (*Kramer*).)[8] The harm to

---

[7] Although the trial court had sustained the demurrer filed by Bank of America alone, it entered a judgment of dismissal in favor of all defendants. No issue is raised in this appeal by plaintiff as to the broad scope of the judgment entered. The individual defendants are not party to this appeal.

[8] Both Countrywide and Bank of America were incorporated in Delaware and thus Delaware law applies to the issues before us. " 'The internal affairs doctrine is a conflict of laws

individual shareholders resulting from an injury to the corporation is indirect and arises solely by virtue of their stock ownership. (*Tooley v. Donaldson, Lufkin & Jenrette, Inc.* (Del. 2004) 845 A.2d 1031, 1035–1036 (*Tooley*).) A derivative action and any recovery in such an action belong to the corporation. (*Id.* at pp. 1038–1039.) A direct individual action by a shareholder, in contrast, alleges an injury to the plaintiff's interests as a shareholder separate and apart from any injury to the corporation as a whole. (*Id.* at pp. 1036, 1039.) Any recovery in such an action belongs to the individual plaintiff. (*Id.* at p. 1036.)

■ Under Delaware law, a two-part test is applied to determine the question of whether the action is derivative or direct. "That issue must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" (*Tooley, supra*, 845 A.2d at p. 1033, original italics.) A helpful approach to this issue would be to look at the body of the plaintiff's complaint and the relief requested and ask, has the plaintiff demonstrated that he or she can prevail *without* showing an injury to the corporation? (*Id.* at p. 1036.) As we discuss below, plaintiff's entire claim is based upon allegations asserting that the misconduct of the individual defendants damaged the corporation, Countrywide. He does not claim he is bringing a direct individual action.

■ Another aspect of a derivative action was potentially presented in this case. That is the shareholder action known as a "double derivative suit." The double derivative claims asserted by plaintiff on behalf of Bank of America are analytically distinct from his derivative claims asserted on behalf of Countrywide. (*Lambrecht v. O'Neal* (Del. 2010) 3 A.3d 277, 281–286 (*Lambrecht*).) "[B]y its nature, a double derivative suit is one brought by a shareholder of a parent corporation to enforce a claim belonging to a subsidiary that is either wholly owned or majority controlled. Normally, such a claim is one that only the parent corporation, acting through its board of directors, is empowered to enforce. Cases may arise, however, where the parent corporation's board is shown to be incapable of making an impartial business judgment regarding whether to assert the subsidiary's claim. In those cases a shareholder of the parent will be permitted to enforce that claim on the parent corporation's behalf, that is, double derivatively." (*Id.* at p. 282.)

principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.' [Citation.]" (*Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213, 223 [94 Cal.Rptr.3d 166].) With certain exceptions not applicable here, the law of the state of incorporation applies. (*Ibid.*) Corporations Code section 2116 codifies that rule in California. Plaintiff does not contend otherwise.

As we have noted, during the pendency of this action Countrywide was merged with Bank of America. Thus, any causes of action belonging to Countrywide, including the derivative claims alleged by plaintiff, became the property of Bank of America. Although plaintiff had expressly reserved the right to do so, he does not challenge on appeal the order sustaining the demurrer to his double derivative claims. He therefore has abandoned any appeal as to the dismissal of those claims. (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 204, fn. 7 [129 Cal.Rptr.3d 433].)

### 3. *Continuous Ownership Rule and the Fraud Exception*

■ The continuous ownership rule limits a plaintiff's standing to maintain a shareholder derivative action.[9] The rule provides that a plaintiff in a derivative action not only must have been a shareholder in the corporation at the time of the alleged wrong as well as at the time of the commencement of suit, but also must remain a shareholder throughout the litigation. (*Lewis v. Anderson* (Del. 1984) 477 A.2d 1040, 1046 (*Anderson*).) A plaintiff who ceases to be a shareholder as a result of a merger or for any other reason loses standing to maintain a derivative suit. (*Id.* at p. 1049; see *Grosset v. Wenaas, supra*, 42 Cal.4th at pp. 1108–1110 [discussing the continuous ownership requirement under Del. law].) The derivative claims become the property of the surviving corporation, which then has the sole right and standing to prosecute the action.[10] (*Ward, supra*, 852 A.2d at p. 901; *Alabama By-Products Corp. v. Cede & Co.* (Del. 1995) 657 A.2d 254, 265.)

The Delaware Supreme Court in *Anderson* stated that there were two recognized exceptions to the general rule depriving a former shareholder of standing to maintain a derivative action, as applied to mergers: "(1) where the merger itself is the subject of a claim of fraud; and (2) where the merger is in reality a reorganization which does not affect plaintiff's ownership of the

---

[9] As already noted, there is no dispute that Delaware substantive law applies in this case pursuant to the internal affairs doctrine, codified at Corporations Code section 2116, which provides that the law of the place of incorporation governs the liability of directors to the corporation and its shareholders. The continuous ownership rule concerns a shareholder's standing to maintain a shareholder derivative action. (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108–1110 [72 Cal.Rptr.3d 129, 175 P.3d 1184].)

[10] The continuous ownership rule, however, does not preclude a double derivative action by a former shareholder. (*Lambrecht, supra*, 3 A.3d at p. 286 [". . . Delaware case law clearly endorses the double derivative action as a post-merger remedy."]; *Lewis v. Ward* (Del. 2004) 852 A.2d 896, 906 (*Ward*) ["the plaintiff did not lack any remedy to pursue her derivative claims . . . the plaintiff might have been able to bring a post-merger double derivative suit but made no attempt to file such an action"].) As already noted, however, plaintiff does not challenge the dismissal of his double derivative claims.

business enterprise. [Citations.]"[11] (*Anderson, supra,* 477 A.2d at p. 1046 & fn. 10.) *Anderson* stated that the exceptions were inapplicable in that case because "Plaintiff has not asserted that the merger was perpetrated to deprive Old Conoco of its claim against the individual defendants; and the merger was clearly not a reorganization resulting in a holding company . . . . " (*Id.* at p. 1046, fn. 10.) *Anderson,* however, did not elaborate further on the scope of the fraud exception.

*Kramer, supra,* 546 A.2d 348, held that the continuous ownership rule deprived the plaintiff of standing to maintain a derivative action and that the fraud exception was inapplicable. (*Id.* at pp. 354–355.) *Kramer* first rejected the plaintiff's argument that his claims were direct rather than derivative. *Kramer* stated in this regard that the plaintiff's allegations of premerger mismanagement resulting in waste of corporate assets constituted derivative claims and did not "implicate the fairness of the merger's terms" or "directly challenge the merger as resulting from a breach of fiduciary duty." (*Kramer, supra,* 546 A.2d at p. 354.) *Kramer* then concluded that the fraud exception was inapplicable because the plaintiff failed to allege "that the merger was fraudulent, perpetrated merely to deprive [the corporation] of its claim against the defendants." (*Id.* at pp. 354–355.)

■ *Ward, supra,* 852 A.2d 896, stated that the continuous ownership rule deprives a former shareholder of standing to maintain a derivative action "unless facts are alleged that fall within one of the two exceptions. [Citations.]" (*Id.* at p. 903, fn. omitted.) The *Ward* court stated, "Although subsequent cases have paraphrased this Court's language in *Lewis v. Anderson,* the substance remains the same—a complaint seeking to invoke the fraud exception must demonstrate that the merger was fraudulent and *done merely to eliminate derivative claims.* [Citations.]" (*Id.* at p. 905, fn. omitted, italics added.) *Ward* concluded that the plaintiff had failed to adequately allege with particularity that the board of directors pursued the merger " 'simply to avoid defending the derivative suit rather than for other valid business reasons.' " (*Id.* at p. 906.)

In *Feldman v. Cutaia, supra,* 951 A.2d at page 731, the court stated, "It is now well established that a plaintiff may avoid dismissal of his derivative claims following a merger in only two distinct circumstances: where the claims asserted are direct, rather than derivative, or where one of the exceptions recognized in *Lewis v. Anderson*[, *supra,* 477 A.2d 1040,] applies." The *Feldman* court stated further, "In [*Anderson*], this Court set forth

---

[11] The continuous ownership rule is inapplicable if the claims asserted are direct rather than derivative. (*Feldman v. Cutaia* (Del. 2008) 951 A.2d 727, 731; *Kramer, supra,* 546 A.2d at p. 354.) A direct attack on a merger includes a claim of unfair dealing or unfair price in the merger transaction. (*Kramer, supra,* at p. 354.)

two exceptions in the merger context to its holding that only a current shareholder has standing to maintain an action that is derivative in nature: first, if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action; or second, if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise. [Citations.]" (*Id.* at fn. 20.)

The foregoing is a summary of the well-settled law of Delaware, as it has existed for over a quarter of a century, on the application of the continuous ownership rule and the very limited exceptions that apply thereto. Plaintiff nonetheless argues that all of this was superseded by the statements of the Delaware Supreme Court in 2010 in *Arkansas Teacher, supra,* 996 A.2d 321. As we explain, we find his arguments unpersuasive.

### 4. *Arkansas Teacher Retirement System v. Caiafa*

The Delaware Supreme Court's opinion in *Arkansas Teacher, supra,* 996 A.2d 321, arose from an objection to the proposed settlement of the same Delaware class action referenced above challenging Bank of America's proposed acquisition of Countrywide (see fn. 5, *ante*). That is, it involved the same merger and acquisition at issue in the case before us. In *Arkansas Teacher,* the objector (TRS) objected to the proposed settlement based on the failure of that settlement to recognize any value in the objector's shareholder derivative claims on behalf of Countrywide in the then pending California federal district court action. The objector also argued that part of the consideration for the merger should be placed in a constructive trust to protect the value of its derivative claims. *Arkansas Teacher* held that the trial court had properly denied the objection and approved the settlement. (996 A.2d at p. 322.) *Arkansas Teacher* held: "The Vice Chancellor appropriately denied the objection, because Delaware corporate fiduciary law does not require directors to value or preserve piecemeal assets in a merger setting, and TRS failed to show a likelihood of prevailing on the merits of its claims. Therefore, we affirm the Vice Chancellor's decision on the basis of the reasons in his opinion."[12] (*Arkansas Teacher, supra,* 996 A.2d at p. 322.)

*Arkansas Teacher* also stated *in dicta* that the objector's allegations of fraudulent conduct by Countrywide directors "suggest a potential relationship between the directors' alleged premerger fraudulent conduct and the rapidly

---

[12] The Delaware trial court had found that the settlement was fair and reasonable based on its consideration of several factors, including principally the objectors' failure to establish the probable validity of their derivative claims in the federal district court action. (*In re Countrywide Corp. Shareholders Litigation* (Del.Ch., Mar. 31, 2009, No. 3464-VCN) 2009 WL 846019, pp. *6–*10.)

and severely depressed stock price on which the merger consideration was based." (*Arkansas Teacher, supra*, 996 A.2d at p. 322.) It reiterated the rule from *Anderson, supra*, 477 A.2d 1040, that a plaintiff in a shareholder derivative action must remain a shareholder in the corporation throughout the litigation to maintain standing and then noted the fraud exception. Plaintiff, however, relies on the following dicta from *Arkansas Teacher* to support his argument that the fraud exception to the continuous ownership rule should not be limited to the narrow circumstances described in previous opinions:

"Other than in instances of fraud or reorganization, a plaintiff loses standing to maintain a derivative suit where the corporation, in which the plaintiff holds stock, merges with another company. A stockholder may maintain his post-merger suit 'if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive stockholders of the standing to bring a derivative action.' [*Lewis v.*] *Anderson*[, *supra*, 477 A.2d 1040,] generally applies where stockholder-plaintiffs allege that the board inadequately priced or improperly conducted a corporate merger, but its terms apply more broadly to fraud connected to the merger.

"The current record does not reflect that the directors prospectively sought and approved a merger, solely to deprive stockholders of standing to bring a derivative action. The extent of the Countrywide directors' allegedly fraudulent conduct and breach of fiduciary duties by failing loyally to oversee the company's practices in good faith would have necessitated (a) corporate rescue; and, (b) individual legal protection. A merger was one of few available alternatives that meet both of those objectives after the board's allegedly fraudulent schemes bankrupted a multibillion-dollar company. Delaware law recognizes a single, inseparable fraud when directors cover massive wrongdoing with an otherwise permissible merger.

"The Vice Chancellor noted that 'avoiding derivative liability was neither the only nor the principal reason for supporting the transaction.' Although we agree that the Countrywide directors and stockholders ran from the *crest* of a ruinous wave of losses, we cannot ignore the close connection between that wave's crest and its underlying trough. No one disputes that Countrywide needed to sell itself, and at a price significantly below its recent share price. An otherwise pristine merger cannot absolve fiduciaries from accountability for fraudulent conduct that necessitated that merger. [Objector] TRS has pleaded facts supporting a colorable claim of fraud that, if proved, would have made the company's dissolution or auction a *fait accompli*.

"As BOA [(Bank of America)] amassed its Countrywide stockholdings, these directors might have seen BOA as a potential fiduciary White Knight.

That is, after allegedly intentionally engaging in fraudulent conduct that caused the stock price to plummet near bankruptcy, Countrywide directors would understandably seek an acquirer to effect a merger that would extinguish potential derivative claims during such a period of upheaval that they would have few alternatives. Whether this plausible scenario reflects this board's single, cohesive plan or merely ties together, like patchwork, a snowballing pattern of fraudulent conduct and conscious neglect, the result is the same and would not fairly constitute a proper discharge of the fiduciary duties of directors of a Delaware corporation." (*Arkansas Teacher, supra,* 996 A.2d at pp. 322–323, fns. omitted, original italics.)

"TRS did not present this claim to the Vice Chancellor, nor did it present us with the proper vehicle to consider whether TRS meets the fraud exception to maintain a post-merger claim. If the Vice Chancellor had found that TRS had successfully pleaded its fraud claim, then TRS—rather than Countrywide—could recover from the former Countrywide directors. In that case, the injured parties would be the shareholders who would have post-merger standing to recover damages instead of the corporation. We, therefore, must hold that the Vice Chancellor did not abuse his discretion in approving the settlement, despite facts in the complaint suggesting that the Countrywide directors' premerger agreement fraud severely depressed the company's value at the time of BOA's acquisition, and arguably necessitated a fire sale merger." (*Arkansas Teacher, supra,* 996 A.2d at pp. 323–324.)

Plaintiff contends *Arkansas Teacher, supra,* 996 A.2d 321, in the above quoted language, clarified and broadened the fraud exception to Delaware's continuous ownership rule so that the exception now applies not only where the sole purpose of a merger was to deprive shareholders of standing to maintain a derivative action, but also where the directors' fraudulent conduct and breach of fiduciary duty prior to a merger impaired the corporation's financial condition to such an extent that a merger became a practical necessity. In our view, plaintiff's reading of *Arkansas Teacher* is untenable and contrary to well-settled Delaware law.

Our conclusion is fatal to plaintiff's claim as the second amended complaint nowhere alleges that the sole purpose of the merger was to deprive shareholders of standing to bring or maintain a derivative action. Moreover, as the *Arkansas Teacher* opinion itself recognized, "[t]he current record does not reflect that the directors prospectively sought and approved a merger, solely to deprive stockholders of standing to bring a derivative action." (*Arkansas Teacher, supra,* 996 A.2d at p. 323.)

### 5. Arkansas Teacher *Does Not Support Plaintiff's Claim*

There are a number of reasons why *Arkansas Teacher, supra*, 996 A.2d 321 does not support plaintiff's argument: First, as Bank of America emphasizes, *Arkansas Teacher*, in the very first paragraph of the opinion, effectively recognized the continuing viability of the *Anderson* continuous ownership rule and the absence of any applicable exception thereto based on the facts alleged in this case. The Delaware Supreme Court expressly stated that the completion of the Countrywide merger *extinguished* the objectors' derivative claim thus justifying the vice-chancellor's conclusion that such derivative claims were worthless (*Arkansas Teacher, supra*, 996 A.2d at p. 322.) To read *Arkansas Teacher* as plaintiff urges would be inconsistent with such acknowledgement of existing law.

Second, it was in 1984 that the Delaware Supreme Court handed down its decision in *Anderson, supra*, 477 A.2d 1040, which discussed and reconciled three separate sections of the Delaware Corporation Law (Del. Code Ann. tit. 8, §§ 259(a), 261, 327) and confirmed the continuous ownership rule and its two narrow exceptions that we have discussed above. These principles have been *consistently* applied in Delaware ever since, whenever the issue of a shareholder's standing to bring or maintain a derivative action has been raised. This includes the Delaware Supreme Court's opinion in *Lambrecht, supra*, 3 A.3d 277, which was handed down just three months *after Arkansas Teacher*. In *Lambrecht*, the Supreme Court again expressly reaffirmed the rule in *Anderson* (and its progeny). Plaintiff's interpretation of *Arkansas Teacher* would necessarily result in a major modification of the *Anderson* court's analysis and decision, as well as upset the scope and thrust of a rule consistently applied by Delaware courts for over 25 years. We find it exceedingly difficult to believe that the same court, in its *Lambrecht* decision, would have forgotten to note or acknowledge what it had done just 90 days earlier in *Arkansas Teacher*. If *Arkansas Teacher* is to be read as plaintiff argues, then *Lambrecht*'s reaffirmance of *Anderson* without mentioning *Arkansas Teacher* would be very puzzling indeed.

Third, plaintiff's reading of the *Arkansas Teacher* opinion is totally inconsistent with the Delaware Supreme Court's earlier opinion in *Tooley, supra*, 845 A.2d 1031 where, as we have discussed, the court expressly defined the distinction between a *derivative* claim and a direct *individual* action and set forth a clear standard by which the difference between the two was to be determined. That standard is clearly not satisfied by plaintiff's assertion that the fraud of the individual defendants caused damage to Countrywide for which plaintiff is now entitled to recover individually even though his claim is admittedly derivative in nature. In suggesting that the facts of this case could justify the assertion by shareholders of a claim that would belong to

them individually, *Arkansas Teacher* was necessarily describing a direct individual claim, not a derivative one.

The *Arkansas Teacher* court's citation of *Braasch v. Goldschmidt* (1964) 41 Del.Ch. 519 [199 A.2d 760] is revealing. *Arkansas Teacher* stated, "Delaware law recognizes a single, inseparable fraud when directors cover massive wrongdoing with an otherwise permissible merger." (*Arkansas Teacher, supra*, 996 A.2d at p. 323.) The court cited *Braasch, supra*, 199 A.2d at page 764, for this proposition. But the cited discussion in *Braasch* involved a direct cause of action by individual shareholders seeking to invalidate a merger, rather than a derivative claim. *Braasch* stated that even if the merger itself was not unlawful, "if the means employed to accomplish that end [(the merger)] were unlawful, the whole might be so tainted with illegality as to require invalidation of the merger." (*Ibid.*) *Braasch* held that the plaintiffs in that action had adequately alleged an individual claim directly attacking the merger based on the directors' alleged premerger fraudulent conduct. (*Ibid.*) The citation to *Braasch* in *Arkansas Teacher* supports our conclusion that *Arkansas Teacher* also was discussing a direct claim, rather than a derivative claim.

■ Fourth, there is no compelling need to justify a broadening of the fraud exception to the continuous ownership rule. Based on the allegations of the second amended complaint, plaintiff certainly could have pursued a double derivative claim where the continuous ownership rule would not have been an issue. (*Feldman v. Cutaia, supra*, 951 A.2d at p. 731.) *Arkansas Teacher* did not even discuss a potential remedy through a double derivative action. *Lambrecht, supra*, 3 A.3d at page 288, stated, "our precedents not only validate but also encourage the bringing of double derivative actions in cases where standing to maintain a standard derivative action is extinguished as a result of an intervening merger." This clearly demonstrates that the availability of a remedy through a double derivative action obviates any need to construe the *Arkansas Teacher* decision as a broadening of the fraud exception.

■ Finally, to accept and apply plaintiff's interpretation of *Arkansas Teacher* would necessarily involve adopting an expansion of the fraud exception to the continuous ownership rule that would effectively swallow that rule. Plaintiff's interpretation of *Arkansas Teacher* is at odds with long-settled Delaware law and is not supported, to our knowledge, by any authority in any other jurisdiction. We therefore reject it.

The trial court's analysis and decision in this matter was correct. We will affirm the judgment.

## *DISPOSITION*

The judgment is affirmed. Bank of America shall recover its costs on appeal.

Klein, P. J., and Kitching, J., concurred.