ARKANSAS TEACHER RETIRE-MENT SYSTEM, et al., Plaintiffs Below, Appellants,

v.

COUNTRYWIDE FINANCIAL CORPORATION, et al., Defendants Below, Appellees.

No. 14, 2013.

Supreme Court of Delaware.

Submitted: July 3, 2013.
Decided: Sept. 10, 2013.

---

Stuart M. Grant, Esquire (argued), Michael J. Barry, Esquire and Diane Zilka, Esquire, Grant & Eisenhofer P.A., Wilmington, Delaware, and Blair A. Nicholas, Esquire and Niki L. Mendoza, Esquire, Bernstein Litowitz Berger & Grossmann LLP, San Diego, California, and Lester L. Levy, Esquire, Carl L. Stine, Esquire, Robert Plosky, Esquire, Wolf Popper LLP, New York, New York, for appellants, Arkansas Teacher Retirement System, Fire & Police Pension Association of Colorado, Louisiana Municipal Police Employees' Retirement System, Central Laborers Pension Fund and Public Employees' Retirement System of Mississippi.

Thomas A. Beck, Esquire, and Richard P. Rollo, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, and Brian E. Pastuszenski, Esquire (argued), Goodwin Procter LLP, Boston, Massachusetts, Daniel P. Roeser, Esquire, Goodwin Procter LLP, New York, New York, and Jason L. Krajcer, and Teodora E. Manolova, Esquire, Goodwin Procter LLP, Los Angeles, California, for appellee, Countrywide Financial Corporation.

Andrew H. Sauder, Esquire, DLA Piper LLP, Wilmington, Delaware, Shirli Fabbri Weiss, Esquire, DLA Piper LLP, San Diego, California, and David A. Priebe, Esquire, DLA Piper LLP, East Palo Alto, California, on behalf of appellee, Eric P. Sieracki.

William M. Lafferty, Esquire and Shannon E. German, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for defendants-appellees, Angelo R. Mozilo, David Sambol, Henry G. Cisneros, Robert J. Donato, Jeffrey J. Cunningham, Martin R. Melone, Robert T. Parry, Oscar

P. Robertson, Keith P. Russell and Stanford L. Kurland.

Daniel P. Lefler, Esquire, and David Siegal, Esquire, Irell & Manella LLP, Los Angeles, California, for Angelo R. Mozilo.

Michael C. Tu, Esquire, and Frank M. Scaduto, Esquire, Orrick, Herrington & Sutcliffe LLP, Los Angeles, California, for David Sambol.

Christopher G. Caldwell, Esquire, Eric S. Pettit, Esquire and Jeanne A. Fugate, Esquire, Caldwell Leslie & Proctor, Los Angeles, California, for Stanford L. Kurland.

Jordan Eth, Esquire, and D. Anthony Rodriguez, Esquire, Morrison & Foerster, LLP, San Francisco, California, for Henry G. Cisneros, Robert J. Donato, Jeffrey M. Cunningham, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice:

This is a proceeding under Article IV, Section 11(8) of the Delaware Constitution and Supreme Court Rule 41. The following question of law was certified to and accepted by this Court from the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"):

> Whether, under the "fraud exception" to Delaware's continuous ownership rule, shareholder plaintiffs may maintain a derivative suit after a merger that divests them of their ownership interest in the corporation on whose behalf they sue by alleging that the merger at issue was necessitated by, and is inseparable

from, the alleged fraud that is the subject of their derivative claims.

We answer that question in the negative. In explaining our answer, we ratify and reaffirm the continuous ownership rule and the fraud exception recognized by our holding in *Lewis v. Anderson*.[1]

### Stipulated Facts

This shareholder derivative action has been appealed to the Ninth Circuit from the orders of the United States District Court for the Central District of California ("District Court"), which granted the defendant-appellee's motion for judgment on the pleadings and denied plaintiffs-appellants' motion for reconsideration. Five institutional investors brought this shareholder derivative action on behalf of the former Countrywide Financial Corporation ("Countrywide"), asserting state and federal derivative claims for breach of fiduciary duty and securities law violations against former Countrywide officers and directors. While the suit was pending in the District Court, Countrywide merged into a wholly-owned subsidiary of Bank of America Corporation ("BofA") in a stock-for-stock transaction that divested the plaintiffs of their Countrywide shares. Nominal defendant, Countrywide then moved for judgment on the pleadings, arguing that the merger terminated the plaintiffs' standing to pursue derivative claims on Countrywide's behalf. The District Court granted the defendant's motion, finding that the plaintiffs could not satisfy the "continuous ownership" requirement for shareholder derivative standing under Federal Rules of Civil Procedure 23.1 and Delaware law.

Thereafter, this Court decided *Arkansas Teacher Retirement System v. Caiafa*,[2] which arose from the same underlying

---

1. *Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984).

2. *Ark. Teacher Ret. Sys. v. Caiafa*, 996 A.2d 321 (Del.2010).

facts and involved the parties to this appeal. Following that intervening decision, the plaintiffs moved for reconsideration of the District Court's order. The plaintiffs argued that, in *Arkansas Teacher*, this Court clarified the scope of the "fraud exception" to Delaware's continuous ownership rule and confirmed that the plaintiffs have post-merger derivative standing in this case. The District Court denied that motion, and the plaintiffs appealed to the Ninth Circuit.

In the Ninth Circuit, the parties agree that Delaware law governs the plaintiffs' derivative standing, although they vigorously dispute the meaning of *Arkansas Teacher* and its effect on this case. The plaintiffs argue that, because they allege "a single, inseparable fraud" by which the defendant Countrywide "directors cover[ed] massive wrongdoing with an otherwise permissible merger,"[3] they maintain post-merger derivative standing under the fraud exception to the continuous ownership rule, as interpreted by *Arkansas Teacher*.

The defendant asserts that *Arkansas Teacher* merely reaffirmed the traditional scope of the fraud exception, as articulated in *Lewis v. Anderson*,[4] and its progeny. The defendants argue that the fraud exception to the continuous ownership requirement applies only where the plaintiffs allege that the merger was executed "merely" to destroy derivative standing and lacked any legitimate business purpose.

The parties agree that the Ninth Circuit panel's decision on this issue of state law will determine the outcome of the appeal pending in the Ninth Circuit. The appeal was argued before the Ninth Circuit and remains undecided pending our answer to its certified question of law.

### District Court Dismisses Derivative Action

The plaintiffs, all former Countrywide shareholders, filed this derivative action in the District Court in October 2007. On January 11, 2008, Countrywide agreed to merge with a subsidiary of BofA in a stock-for-stock transaction valued at approximately $4 billion. On July 1, 2008, following approval by Countrywide's shareholders, the merger closed. All outstanding Countrywide shares were exchanged for BofA shares, and all Countrywide shareholders at the time of the merger became shareholders of BofA. Countrywide was merged into BofA's acquisition subsidiary, which remained a wholly-owned subsidiary of BofA without any public shareholders.

The defendants then moved in the District Court for judgment on the pleadings dismissing the plaintiffs' derivative claims on the ground that the plaintiffs lost derivative standing when, as a result of the merger, they ceased to be Countrywide shareholders. In opposing the motion, the plaintiffs took the position that federal, not Delaware, law governed their derivative standing and asked the District Court to make an "equitable exception" to the federal, not Delaware, continuous ownership requirement. The plaintiffs expressly challenged the applicability of Delaware's continuous ownership rule, and apparently did not argue that they could satisfy the Delaware fraud exception. On December 11, 2008, the District Court granted the defendants' motion for judgment on the pleadings. It dismissed all derivative claims, holding that the merger had extinguished the plaintiffs' derivative standing under both federal and Delaware law.

---

3. *Id.* at 323 (citation omitted).

4. *Lewis v. Anderson,* 477 A.2d 1040 (Del. 1984).

### Plaintiffs' Direct Claims
### Settled In Delaware

After Countrywide and BofA had agreed to the merger, the plaintiffs amended their District Court complaint to add direct merger-related class claims. The District Court stayed the plaintiffs' direct claims in favor of similar claims asserted on behalf of the same putative class that were pending in the Court of Chancery. Following the announcement of an agreement to settle the merger-related direct claims in Delaware, the District Court ordered the plaintiffs to address to the Court of Chancery any objections concerning the release of the merger-related direct claims.

Before the Court of Chancery, the plaintiffs did object to approval of the settlement, arguing that it would improperly release their direct claims. Those direct claims were that Countrywide's directors had breached their duties (i) both to "value" the plaintiffs' shareholder derivative claims separately by carving them out of the merger and (ii) to "preserve" the value of those derivative claims "either by extracting additional consideration from [BofA] or by assigning the derivative claims to a litigation trust that could pursue the claims for the benefit of Countrywide's shareholders."

On March 31, 2009, based on its review of a discovery record of more than 400,000 pages of documents, the Court of Chancery overruled the plaintiffs' objection to the settlement. The Court of Chancery held that the plaintiffs' direct "failure-to-value" and "failure-to-preserve" claims were unsupported by Delaware law, and thus were "functionally worthless." The Court of Chancery also held that the settlement was "fair" and "reasonable" to the proposed class despite the release of those direct claims.

In approving the settlement, the Court of Chancery made several relevant factual findings about the Countrywide board's reasons for approving the merger. First, the Court of Chancery found that the merger had not been motivated by any desire to eliminate derivative standing, but rather, by economic necessity: "[A]voiding derivative liability was neither the only nor the principal reason for supporting the transaction." Second, the Court of Chancery found that the merger consideration received by Countrywide shareholders was fair: "[T]here is precious little doubt that the consideration received by the Countrywide shareholders was anything other than at least fair."

The plaintiffs appealed from the Court of Chancery's final judgment approving the settlement. This Court affirmed that judgment, stating: "The Vice Chancellor appropriately denied the objection, because Delaware corporate fiduciary law does not require directors to value or preserve piecemeal assets in a merger setting, and [the plaintiffs] failed to show a likelihood of prevailing on the merits of [their] claims."[5] In the first paragraph of our opinion, this Court stated that the closing of the merger had terminated the plaintiffs' standing to pursue derivative claims under longstanding Delaware law:

> The Vice Chancellor denied the objection and approved the settlement, allowing [BofA] to close its acquisition of Countrywide, *thus extinguishing [the plaintiffs'] standing to pursue derivative claims*. Because the Vice Chancellor did not abuse his discretion by holding that [the plaintiffs'] derivative suit claims for breach of asserted duties were worthless and, therefore, added no conceivable value to the merger, we ***AFFIRM*** his judgment approving the settlement.[6]

5. *Ark. Teacher Ret. Sys. v. Caiafa*, 996 A.2d at 322.

6. *Id.* (first emphasis added).

### Dictum *in* Arkansas Teachers

In the *Arkansas Teacher*'s opinion, after announcing our conclusion, this Court then in *dictum* discussed certain direct claims that the plaintiffs could have but did not present to the Court of Chancery.[7] In particular, this Court stated that the plaintiffs theoretically could have pled a claim for "a single, inseparable fraud" alleging that pre-merger fraudulent conduct made the merger "a *fait accompli*."[8] This Court stated that, in any such claim, "the injured parties would be the shareholders who would have post-merger standing to recover [the] damages instead of the corporation."[9] This Court noted, however, that the plaintiffs "did not present this claim to the Vice Chancellor."[10] Therefore, we held "that the Vice Chancellor did not abuse his discretion in approving the settlement, despite facts in the complaint suggesting that the Countrywide directors' premerger agreement fraud severely depressed the company's value at the time of BOA's acquisition, and arguably necessitated a fire sale merger."[11]

### *Plaintiffs Seek Reconsideration of Derivative Claims*

Following this Court's decision in *Arkansas Teacher*, the plaintiffs moved for reconsideration of the District Court's order dismissing their derivative claims. Before the District Court, the plaintiffs asserted that Delaware law, rather than federal law, governed their post-merger derivative standing. The plaintiffs then argued that this Court's *dictum* in *Arkansas Teacher* represented "a new material change of law" that "expanded the post-merger standing fraud exception to include situations where, as here, the plaintiffs

sufficiently allege fraudulent conduct that necessitated that merger." The plaintiffs acknowledged, however, that before this Court announced its dictum in *Arkansas Teacher*, they did not fit within the *Lewis v. Anderson*[12] fraud exception to Delaware's continuous ownership rule.

The District Court denied the plaintiffs' motion for reconsideration, holding that this Court's *dictum* in *Arkansas Teacher* "did not change Delaware law regarding the loss of derivative standing after a merger":

> [T]he Delaware Supreme Court relied on established Delaware law and affirmed the decision of the Vice Chancellor on the basis of the reasons in his opinion, because the record did not support a finding that avoiding derivative liability was the principal reason for the Countrywide Board of Directors' approval of the merger with Bank of America. Moreover, the Delaware Supreme Court acknowledged that its approval of the settlement extinguished standing to bring derivative claims on behalf of Countrywide.

The District Court also found that this Court's *Arkansas Teacher dictum* simply confirmed longstanding Delaware law that "*shareholders*—not the corporation via a derivative suit—would have had post-merger standing to recover damages from a *direct* fraud claim, if one had been properly pleaded." After the District Court entered it order denying the plaintiffs' motion for reconsideration and dismissing the case, the plaintiffs appealed to the Ninth Circuit, which certified the question that is now before this Court.

---

7.   *Id.* at 322–24.

8.   *Id.* at 323.

9.   *Id.* at 324.

10.   *Id.* at 323.

11.   *Id.* at 324.

12.   *Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984).

### Lewis v. Anderson Precedent

In *Anderson*, this Court held that for a shareholder to have standing to maintain a derivative action, the plaintiff "must not only be a stockholder at the time of the alleged wrong and at the time of commencement of suit but ... must also maintain shareholder status throughout the litigation."[13] These two conditions precedent to initiating and maintaining a derivative action are referred to, respectively, as the "contemporaneous ownership" and the "continuous ownership" requirements. The contemporaneous ownership requirement is imposed by statute.[14] The continuous ownership requirement is a matter of common law.

■ In *Lewis v. Anderson*, this Court held that where the corporation on whose behalf a derivative action is pending is later acquired in a merger that deprives the derivative plaintiff of her shares, the derivative claim—originally belonging to the acquired corporation—is transferred to and becomes an asset of the acquiring corporation as a matter of statutory law.[15] The original plaintiff loses standing to maintain the derivative action, because as a consequence of the merger, the original derivative shareholder plaintiff can no longer satisfy the continuous ownership requirement.[16]

In *Lewis v. Anderson*, this Court recognized two exceptions to the loss-of-standing rule. The first is where the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of their standing to bring or maintain a derivative action. The second is where the merger is essentially a reorganization that does not affect the plaintiff's relative ownership in the post-merger enterprise. Only the fraud exception is implicated by the certified question from the Ninth Circuit in this proceeding.

### Plaintiffs' Argument

In *Arkansas Teacher*, this Court unequivocally stated that Countrywide's merger with BofA had extinguished the plaintiffs' standing to pursue derivative claims.[17] The plaintiffs characterize that statement in *Arkansas Teacher* as part of "a summary of the basis for Plaintiffs' objection to the class action settlement." That characterization, however, cannot be reconciled with the unambiguous statement in our opinion.

After ruling that the Countrywide-BofA merger had extinguished Countrywide shareholders' standing to pursue derivative claims, this Court discussed, in *dictum*, certain direct claims that the plaintiffs could have brought, but did not. According to the plaintiffs, that *dictum* overruled *sub silentio* more than twenty-five years of precedent that consistently held the fraud exception applies only where the sole purpose of a merger is to extinguish shareholders' derivative standing.[18] The plaintiffs' argument, however,

13. *Id.* at 1046 (citations omitted).

14. Title 8, § 327 of the Delaware Code provides:
> In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law.

15. *Lewis v. Anderson*, 477 A.2d at 1049–50; Del.Code Ann. tit. 8, § 259 (2013).

16. *Lewis v. Anderson*, 477 A.2d at 1049–50; Del.Code Ann. tit. 8, § 259 (2013).

17. *Ark. Teacher Ret. Sys. v. Caiafa*, 996 A.2d at 322.

18. *Lambrecht v. O'Neal*, 3 A.3d 277, 284, n. 20 (Del.2010); *Ark. Teacher Ret. Sys. v. Caiafa*, 996 A.2d at 323; *Feldman v. Cutaia*, 951 A.2d 727, 731 & n. 20 (Del.2008); *Lewis v. Ward*, 852 A.2d 896, 904 (Del.2004); *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 354 (Del.1988); *Lewis v. Anderson*, 477 A.2d at 1046 n. 10.

is contradicted not only by our holding in *Arkansas Teacher* that the Court of Chancery's approval of the merger extinguished the plaintiffs' derivative standing, but also by the language and reasoning of the *dictum* itself.

### Inseparable Fraud Explained

In its discussion of "inseparable fraud," this Court made clear that it was referring to *direct*, not derivative, claims. This Court began its discussion by reaffirming the narrow scope of the fraud exception as set forth in *Anderson* and its progeny.[19] This Court reiterated that "[a] stockholder may maintain his suit post-merger 'if the merger itself is the subject of a claim of fraud, being perpetrated *merely* to deprive stockholders of standing to bring a derivative action.'"[20] We then explained that the conditions necessary to satisfy the fraud exception were not present in this case because the record did "not reflect that the [Countrywide] directors prospectively sought an approved a merger, solely to deprive stockholders of standing to bring a derivative action."[21] This Court recognized that "[t]he Vice Chancellor noted that avoiding derivative liability was neither the only nor the principal reason for supporting the transaction."[22]

In *Lewis v. Anderson*, this Court reconciled Delaware's extant common law jurisprudence and the applicable provisions of the Delaware General Corporation Law statute regarding derivative standing following a corporate merger:

The holdings of *Braasch, Heit* and *Schreiber* that a corporate merger destroys derivative standing of former shareholders of the merged corporation from instituting or pursuing derivative claims confirm [section] 327's requirement of continued as well as original standing. . . .

We conclude that 8 *Del. C.* [sections] 259, 261 and 327, read individually and collectively, permit one result which is not only consistent but sound: A plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit.[23]

In our *dictum* in *Arkansas Teacher*, stating that "Delaware law recognizes a single, inseparable fraud," this Court also cited *Braasch v. Goldschmidt*.[24] *Braasch* involved the acquisition of American Sumatra Tobacco Corporation ("American Sumatra") by its majority shareholder, whereby the shareholder first acquired over 90 percent of American Sumatra's shares through a tender offer and then used a statutory short-form merger to complete the acquisition.[25] The plaintiffs alleged fraud in connection with the tender offer—*i.e.*, that the majority shareholder had "coerced the public stockholders into selling their shares pursuant to the offer to buy upon false, deceptive and misleading statements made in the public press and in official documents."[26] But the plaintiffs "d[id] not challenge the regularity of the merger proceedings" themselves.[27]

19. *Ark. Teacher Ret. Sys. v. Caiafa*, 996 A.2d at 322–23 (quoting *Lewis v. Ward*, 852 A.2d 896, 902 (Del.2004)).

20. *Id.* at 323 (emphasis added) (citation omitted).

21. *Id.*

22. *Id.* (citation omitted) (internal quotation marks omitted).

23. *Lewis v. Anderson*, 477 A.2d at 1047–49.

24. *Braasch v. Goldschmidt*, 199 A.2d 760, 764 (Del.Ch.1964).

25. *Id.* at 762.

26. *Id.* at 763.

27. *Id.*

On those facts, the Court of Chancery dismissed the plaintiffs' derivative claims, holding that "the derivative rights asserted passed to the surviving corporation" and the standing of the former shareholders of the acquired corporation to pursue derivative claims was thereby extinguished by the merger.[28] Conversely, the Court of Chancery allowed certain of the plaintiffs' *direct* post-merger claims to proceed, finding that the plaintiffs had effectively alleged "that the merger was the final step of a conspiracy to accomplish an unlawful end by unlawful means."[29] The Court of Chancery explained that, even if "the end was not, in and by itself, unlawful, if the means employed to accomplish that end were unlawful, the whole might be so tainted with illegality as to require invalidation of the merger."[30]

*Braasch v. Goldschmidt* was cited in both *Lewis v. Anderson* and *Arkansas Teacher*. It supports the conclusion that where pre-merger fraudulent conduct makes a merger inevitable, that conduct gives rise to a direct claim that can survive the merger, but not a derivative claim. In *Arkansas Teacher*, this Court was careful to cite to that portion of *Braasch* which discusses the survival of *direct* claims, when addressing the direct claims that the plaintiffs here could have brought (but did not), and separately to that portion of *Braasch* that discusses loss of derivative standing when addressing the plaintiffs' derivative claims.

Specifically, in addressing the continuous ownership rule, this Court made a pinpoint citation to page 767 of *Braasch*, which discusses the derivative claims that the Court of Chancery had dismissed.[31] In contrast, in our discussion of *"inseparable fraud,"* this Court cited the portion of *Braasch*[32] addressing the direct claims that the Court of Chancery sustained.[33] *Arkansas Teacher*'s pinpoint citations to these two distinct portions of *Braasch* underscore that this Court's *dictum* about "inseparable fraud" referred to direct, not derivative, claims.

### Dictum *Describes a Direct Claim*

This Court's "inseparable fraud" *dictum* is also consistent with the framework for distinguishing between direct and derivative claims adopted in *Tooley v. Donaldson, Lufkin & Jenrette*.[34] In *Tooley*, this Court held that whether a claim is direct or derivative turns "solely on the following questions: [1] [w]ho suffered the alleged harm-the corporation or the suing stockholder individually-and [2] who would receive the benefit of the recovery or other remedy?"[35] In *Arkansas Teacher*, this Court stated that any injury flowing from the "inseparable fraud" would be suffered by the shareholders rather than the corporation and any recovery would go to the shareholders rather than the corporation: "If the Vice Chancellor had found that [the plaintiffs] had successfully pleaded [their] fraud claim then [plaintiffs]—rather than Countrywide—could recover from the former Countrywide directors. In that case, the *injured parties would be the shareholders* who would have post-merger

---

**28.** *Id.* at 767.

**29.** *Id.* at 764.

**30.** *Id.*

**31.** *See Ark. Teacher Ret. Sys. v. Caiafa,* 996 A.2d at 323 n. 1 (citing *Braasch v. Goldschmidt,* 199 A.2d at 767).

**32.** *Id.* at 323 (citing *Braasch v. Goldschmidt,* 199 A.2d at 764).

**33.** *See id.* at 323 & n. 3 (citing *Braasch v. Goldschmidt,* 199 A.2d at 764).

**34.** *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1035 (Del.2004).

**35.** *Id.*

standing to recover damages *instead of the corporation.*[36] Accordingly, this Court's unambiguous language in *Arkansas Teacher* demonstrates that any "inseparable fraud" claim would be direct.

### Question Answered

 The shareholders ability "to initiate an action on behalf of the corporation inherently impinges upon the directors' statutory power to manage the affairs of the corporation."[37] Therefore, "the law imposes certain prerequisites on a shareholder's right to sue derivatively."[38] The continuous ownership rule is one of those requirements.[39]

> [A] shareholder is permitted to intrude upon the authority of the board by means of a derivative suit only because his status as a shareholder provides an interest and incentive to obtain legal redress *for the benefit of the corporation.* Once the derivative plaintiff ceases to be a stockholder in the corporation on whose behalf the suit was brought, he no longer has a financial interest in any recovery pursued *for the benefit of the corporation.*[40]

*Lewis v. Anderson* is settled Delaware law and has been consistently followed since 1984.[41] In *Arkansas Teacher,* this Court did not change the scope of the fraud exception. Indeed, in *Lambrecht v. O'Neal,* which was decided three months after *Arkansas Teacher,* this Court once again reaffirmed that the *Lewis v. Anderson* fraud exception applies only in the limited circumstance "where the merger itself is . . . being perpetrated merely to deprive shareholders of their standing to bring the derivative action. . . ."[42]

We hold *Arkansas Teacher* did not "clarify," "expand," or constitute "a new material change" in *Lewis v. Anderson*'s continuous ownership rule or the fraud exception.[43] In the first paragraph of *Arkansas Teacher—i.e.,* the portion that is not *dictum—*this Court unequivocally held that the Countrywide–BofA merger extinguished the plaintiffs' derivative standing.

We answer the certified question in the negative. The Clerk is directed to transmit this opinion to the Ninth Circuit.

**36.** *Ark. Teacher Ret. Sys. v. Caiafa,* 996 A.2d at 323–24 (emphasis added).

**37.** *Kaplan v. Peat Marwick, Mitchell & Co.,* 540 A.2d 726, 730 (Del.1988).

**38.** *Id.*

**39.** *Ala. By–Prods. Corp. v. Cede & Co. ex rel. Shearson Lehman Bros.,* 657 A.2d 254, 264 (Del.1995) (citing *Lewis v. Anderson,* 477 A.2d at 1046).

**40.** *Id.* at 265 (emphasis added).

**41.** *Lambrecht v. O'Neal,* 3 A.3d at 288 n. 36.

**42.** *Id.* at 284, n. 20.

**43.** *See Lewis v. Anderson,* 477 A.2d 1040 (Del.1984).